[No. 10,712.—In Bank.]
December 12, 1882.

## THE PEOPLE v. THOMAS L. WESTLAKE.

HOMICIDE—JUSTIFICATION—THREATS.—On the trial of the defendant for murder, the Court instructed the jury: "Past threats or conduct of the deceased, how violent soever, will not excuse a homicide without sufficient present demonstration to authorize the belief that the deadly purpose then exists and the fear that it will then be executed." "The danger must be present, apparent, and imminent, and the killing must be done under a well-founded belief that it was absolutely necessary for the de-

fendant to kill the deceased at that time to save himself from great bodily harm." *Held:* The instructions were correct.

ID.—ID.—CASE DISTINGUISHED.—*The People* v. *Flahave,* 58 Cal. 249, distinguished.

ID.—ID.—CASE CRITICISED.—The Court instructed the jury: "If you believe beyond a reasonable doubt, from the evidence, that the defendant killed the deceased, then to render said killing justifiable, it must appear that the defendant was wholly without fault imputable to him by law in bringing about or commencing the difficulty in which the mortal wound was given."

*Held:* The instruction is taken literally from the decision of the late Supreme Court in *People* v. *Lamb,* 17 Cal. 323, which has since been followed and approved by this Court in *People* v. *Travis,* 56 id. 254. It is true that in *People* v. *Simons,* 60 Cal. 72, the doctrine enunciated in those cases seems to have been questioned, but it was not questioned by a majority of the Judges who concurred in that decision, and the case is not entitled to be considered as an authoritative overruling of the former cases. It is not to be doubted that a person accused of crime may show in justification that although he brought upon himself an imminent danger, he, in the presence of that necessity, changed his mind and conduct and honestly endeavored to escape from it, but could not without striking the mortal blow. But that is not the present case. (SHARPSTEIN, J., dissenting.)

ID.—ID.—HYPOTHETICAL INSTRUCTION.—The Court, in effect, instructed the jury that if they were satisfied beyond a reasonable doubt, from all the facts and circumstances in the case, of the existence of the facts which he stated to them and which the evidence tended to prove, then the defendant would be guilty of murder or manslaughter, as they might determine.

*Held:* It is allowable for a Court to give a hypothetical instruction to the jury, provided the province of the jury be not invaded. No invasion took place in this instance. The jury were left entirely free in the exercise of their functions to find the facts stated to them, and were cautioned that the facts must be found by them from the evidence beyond a reasonable doubt.

ID.—RESERVED RULING AS TO THE ADMISSIBILITY OF EVIDENCE.—Where the ruling upon an objection to a question is reserved by the Court, and the defendant does not afterwards ask for or make any effort to obtain a ruling upon the objection, or move to strike out the answer to the question, the ruling upon which has been reserved, the legal presumption is that a ruling has been waived.

ID.—MEDICAL EXPERT—EVIDENCE.—An objection was sustained to the following question, asked of a medical witness who had made a *post-mortem* examination of the body of the deceased: "State, from the examination you gave the wound, the course of the ball and the condition of the deceased, whether, if he were moving in a north-westerly direction, or standing facing a north-west direction, he could have received that wound from the pistol-shot fired by a person standing north of him and facing south."

*Held:* Whether the wound of which the witness died could have been in-

flicted by a pistol-shot fired by the defendant from a certain direction, was a fact to be found by the jury from the evidence of the circumstances under which the homicide was committed, or by inference, from the relative position of the parties at the time the shot was fired. It was not such a matter of science or skill as required the opinion of an expert.

ID.—DECLARATION OF DECEASED AFTER THE KILLING—RES GESTÆ.—Declarations of a person who has been shot, made a half an hour after the shooting, as to what he intends to do to the man who shot him, are not part of the *res gestæ* of the shooting.

ID.—EXCLUSION OF EVIDENCE—UNCONTRADICTED TESTIMONY—IMMATERIAL ERROR.—The exclusion of the testimony of one witness as to a fact which has been proved by the uncontradicted testimony of another witness, is not a prejudicial error; for the direct evidence of one witness who is entitled to full credit, is sufficient for proof of any fact except perjury and treason.

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Superior Court of the County of Shasta. BELL, J.

*Chipman & Garter* and *S. Sweeney*, for Appellant.

*A. L. Hart*, Attorney General, for Respondent.

McKEE, J.:

In the Superior Court of Shasta County Thomas L. Westlake was charged, by criminal information, with having committed the crime of murder, by maliciously and unlawfully killing one John McCool, in that county. Upon trial a verdict was rendered against him of murder in the second degree, and on this appeal, which is from the judgment of conviction, and from an order denying his motion for a new trial, it is insisted that the Court erred: *first*, in giving to the jury the following instruction upon the subject of justifiable homicide:

"Past threats or conduct of the deceased, how violent soever, will not excuse a homicide, without *sufficient present demonstration to authorize the belief* that the *deadly* purpose *then* exists, and the fear that it will then be executed.

"The danger must be *present*, apparent, and *imminent*, and the killing must be done under a *well-founded* belief that it was *absolutely necessary* for the defendant to kill the deceased at that time to save himself from great bodily harm."

The first part of this instruction is challenged as erroneous;

but as a proposition in criminal law, it *is true* that previous insults or conduct, however violent and abusive, are not, in and of themselves, sufficient to justify or excuse any one for the commission of a crime. (*People* v. *Iams,* 57 Cal. 127.) They are, however, evidential circumstances, which, in connection with the facts and circumstances in which a crime has been committed, are entitled to due consideration in determining whether the person charged with the commission of the crime was justifiable or not. Substantially, that was the import of the first part of the instruction, and it was expressed in such language that the jury could not have misunderstood it.

But it is claimed that the instruction as an entirety is objectionable under the decision by this Court in *Flahave's Case,* 58 Cal. 249.

The instructions in the two cases are not identical. In the *Flahave Case* the disapproved instruction was substantially this : To justify a person for killing another upon the ground of self-defense, the killing must be done under an appearance of danger so urgent and pressing that it was absolutely necessary to save his own life or to prevent great bodily injury. In this case the instruction was qualified by the expression that the killing must be done *under a well-founded belief that it was absolutely necessary,* etc. That qualification saves the instruction from the rule of the *Flahave Case,* and, as qualified, the instruction in this case, as an entirety, was right. It is substantially the instruction which was given in the case of *The State* v. *Rippy,* 2 Head. 217, which the Supreme Court of Tennessee approved as sound law.

Justification for a homicide, according to the Penal Code, must rest upon two things: 1. A reasonable cause; 2. An actual apprehension of a design to commit a felony or to do some great bodily injury. Both must exist or neither will avail. To constitute the defense the apprehension of danger must be founded on sufficient circumstances, real or apparent, to authorize the opinion that the felonious design then exists; previous threats or menacing conduct constitute part of such circumstances. And the circumstances must not only be such as authorize the fear of death or great bodily harm, but the fear caused by them must be actual—really entertained, and

the homicidal act must have been done under the controlling influence of that fear, or, in other words, under the honest and well-founded belief that it was absolutely necessary to kill at that moment, to save from the imminent danger that menaced life or limb. Can such a belief arise out of circumstances of necessity or danger which a party has, intentionally or by his own fault, brought upon himself? We think not. Hence we see no error in the following instruction upon the same subject of justification, to which the defendant took exceptions:

"If you believe beyond a reasonable doubt from the evidence that the defendant killed the deceased, then to render said killing justifiable it must appear that the defendant was wholly without fault imputable to him by law, in bringing about or commencing the difficulty in which the mortal wound was given."

The instruction is taken literally from the decision of the late Supreme Court in *People* v. *Lamb,* 17 Cal. 323, which has been since followed and approved by this Court in *People* v. *Travis,* 56 Id. 254. It is true that in *People* v. *Simons,* 60 Cal. 72, the doctrine enunciated in those cases seems to have been questioned; but it was not questioned by a majority of the Judges who concurred in that decision; and the case is not entitled to be considered as an authoritative overruling of the former cases. And those cases, we think, should not be overruled, for, as a proposition in criminal law, the doctrine enunciated by them rests upon reason and authority. As has been already said, the apprehension of danger to life or limb which justifies a man for taking the life of another must be an honest one—one that is well grounded, and must arise out of a reasonable cause; but a cause which originates in the fault of the person himself—in a quarrel which he has provoked, or in a danger which he has voluntarily brought upon himself, by his own misconduct, can not be considered reasonable or sufficient in law to support a well-grounded apprehension of imminent danger to his person. Error of apprehension the law overlooks, when a man is called upon to act on appearances; but it does not overlook dishonesty of apprehension. Hence a real or apparent necessity brought about by the design, contrivance, or fault of the defendant, can not be availed of as a defense for the commission of a

crime. (*State* v. *Rippy, supra; Stewart* v. *State,* 15 Ohio St. 155; *State* v. *Neeley,* 20 Iowa, 109; *State* v. *Roach,* 34 Geo. 78; *State* v. *Eiland,* 52 Ala. 322; *State* v. *Evans,* 44 Miss. 762; *People* v. *Gainey,* 97 Ill. 271.)

Yet it is not to be doubted that a person accused of crime may show, in justification, that although he brought upon himself an imminent danger, he, in the presence of that necessity, changed his mind and conduct, and honestly endeavored to escape from it, but could not without striking the mortal blow. But that is not the present case. And, in the absence of such circumstances, it must be true, as a legal proposition, that where a defendant seeks and brings upon himself a difficulty with the deceased, in which he willingly continues until he involves himself in the necessity to kill, the law will not hold him guiltless. The right of self-defense, which justifies a homicide, does not include the right of attack.

2. The instruction numbered twenty-two was correct. In effect, the Court told the jury that if they were satisfied "beyond a reasonable doubt, from all the facts and circumstances in the case," of the existence of the facts which he stated to them, and which the evidence tended to prove, then the defendant would be guilty of murder or manslaughter, as they might determine.

It is allowable for a Court to give a hypothetical instruction to the jury, provided the province of the jury be not invaded. No invasion took place in this instance; the jury were left entirely free, in the exercise of their functions, to find the facts stated to them, and were cautioned that the facts must be found by them, from the evidence, beyond a reasonable doubt.

3. A witness for the prosecution, on his direct examination, testified that McCool (the deceased) and a younger brother of the defendant, on the morning of the homicide, came along and halted right in front of the door of the saloon, near which the witness was seated. When they halted, McCool said to young Westlake, "I was not alluding to you or your family." At the time of the remark the witness did not observe that the defendant was present, but he came forward and joined them immediately afterwards and commenced the difficulty with McCool, in which the latter was killed. To the remark,

counsel for defendant "objected as evidence and moved that it be stricken out." No ruling was *then* made by the Court upon the objection or motion. Impliedly, the Court reserved its ruling, and no exception was taken by defendant. But the Court did not, at any time during the trial of the cause, pass upon either, and this omission of the Court is assigned as error. But the defendant did not at any time ask for a ruling; and where a defendant makes no effort to obtain a definite ruling upon an objection to a question asked of a witness, or a motion to strike out the answer to the question, the ruling upon which has been reserved, the legal presumption is that a ruling was waived. (*People* v. *Sanford,* 43 Cal. 32.) This presumption also arises from the fact disclosed by the record in this case, that the defendant did not make the omission of the Court to rule upon his objection, or motion to strike out part of the grounds of his motion for a new trial.

4. A medical witness, called by the defendant, after testifying that he had made a *post mortem* examination of the body of the deceased, was asked this question: "State from the examination you gave of the wound, the course of the ball, and the condition of the deceased, whether, if he were moving in a north-westerly direction, or standing facing a north-west direction, he could have received that wound from the pistol shot fired by a person standing north of him and facing south?" Objection was taken to the question, which was sustained, and the ruling is assigned as error.

Whether the wound of which the deceased died could have been inflicted by a pistol shot fired by the defendant from a certain direction, was a fact to be found by the jury from the evidence of the circumstances in which the homicide was committed, or to be inferred from the relative position of the parties at the time the shot was fired; it was not such a matter of science or skill as required the opinion of an expert. (*People* v. *Smith,* 4 Pac. C. L. J. 213.) There was, therefore, no error in excluding the opinion of the witness. Nor did the Court err in excluding the testimony of the same witness as to a declaration made by McCool, half an hour after he had been shot, to the witness, who was his attending physician. The declaration related to what he then meant to do to the defendant for shooting him. Declarations of a person who

has been shot, made half an hour after the shooting, as to what he intends to do to the man who shot him, are not part of the *res gestœ* of the shooting.   (C. C. P., § 1850.)

*Lastly*—It is contended that in excluding the testimony of John Stewart, a witness for the defendant, as to the communication to defendant of a threat which had been made by McCool against the defendant, there was error. But the threat, and the communication of it to the defendant, had been proved by the testimony of another witness, who was unimpeached and uncontradicted, and the defendant himself testified on the same subject. The exclusion of the testimony of one witness as to a fact which has been proved by the uncontradicted evidence of another witness, is not a prejudicial error (*People* v. *Reed,* 48 Cal. 553); for the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason. (Sec. 1844, C. C. P.)

There is no error in the record, and the judgment and order appealed from are-affirmed.

MORRISON, C. J., and MYRICK, J., concurred.

ROSS, J., concurred in the judgment.

SHARPSTEIN, J., dissenting:

The following instruction, in which the Court said, " If you believe, beyond a reasonable doubt, from the evidence, that the defendant commenced the affray with the deceased, in which the mortal wound was given, then his fear of danger, if really entertained, would not justify him in taking the life of the deceased," can not, in my judgment, be reconciled with that provision of the Penal Code which makes homicide justifiable, when committed by a person in the lawful defense of such person, even if he was the assailant, if he had really and in good faith endeavored to decline any further struggle before the homicide was committed. (Pen. C., § 177.) This error, if error it be, is repeated in several other instructions.