[No. 20851. In Bank. — February 20, 1892.]

THE PEOPLE, RESPONDENT, *v.* J. D. SMITH, APPELLANT.

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — WOUND OF DEFENDANT — EXPERT EVIDENCE — POSITION OF DEFENDANT WHEN SHOT — QUESTION FOR JURY. — Upon the trial of a defendant charged with murder, where the defendant contended that he acted in self-defense, and did not shoot until after he himself was wounded, and the position of his wound was shown and also the course taken by the bullet, the question as to his position at the time he was shot is not one in relation to which the opinion of an expert can be properly received, but is for the jury to determine.

ID. — APPEAL — PREJUDICIAL ERROR — PRESUMPTION. — An error in the admission of evidence must be presumed prejudicial, where it cannot be said with certainty that the incompetent evidence did not have any influence upon the minds of the jury in rendering their verdict.

Aᴘᴘᴇᴀʟ from a judgment of the Superior Court of Fresno County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*S. J. Hinds*, and *Frank H. Short*, for Appellant.

The question as to the position of the defendant and the course of the bullet was a question for the jury, and not a proper question for experts to determine. (*McKee* v. *State*, 82 Ala. 32; *Walker* v. *State*, 58 Ala. 393; *Bennett* v. *State*, 52 Ala. 370; *Kennedy* v. *People*, 39 N. Y. 245; *People* v. *Bodie*, 1 Denio, 231; *Wilson* v. *People*, 4 Park. Cr. 619; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 78; 22 Am. Dec. 567; *People* v. *Westlake*, 62 Cal. 303; Lawson on Expert and Opinion Evidence, 130; *Jones* v. *State*, 71 Ind. 66; *Woodin* v. *People*, 1 Park. Cr. 464.)

*W. W. Foote*, and *Attorney-General Hart*, for Respondent.

There was no showing that the evidence of the expert was in any way material, or tended in any way to prejudice the defendant; and as no motion was made to strike it out, the judgment ought not to be reversed upon the ruling of the court. (*People* v. *Mahoney*, 77 Cal. 532, 533.)

Dᴇ Hᴀᴠᴇɴ, J. — The defendant was charged with the crime of murder, and was convicted of manslaughter. The defendant was himself shot by the deceased during the difficulty which resulted in the homicide, and it was a contested question upon the trial as to whether the defendant or the deceased fired first, the contention of the defendant being, that he acted in self-defense, and did not shoot until after he himself was wounded; and in the determination of this question it became material to ascertain the position in which the defendant was at the time when he was shot.

Upon the trial, Dr. Hayden, a physician and surgeon, was called as a witness on behalf of the people, and was asked: " Will you state, if you can, from your examina-

tion of this man's arm and your familiarity with gunshot-wounds, if you are familiar with them, in what position, in your judgment, this man's arm was at the time that wound was received?" The question was objected to by defendant as incompetent, which objection was overruled, and the witness, in giving his opinion, stated that the defendant when shot was in one of two positions: 1. Standing with his side toward the discharged weapon, with the forearm flexed almost to a right angle to the upper arm, and the arm and elbow carried in front of and well toward the right side of the trunk, the trunk being inclined to the right of a perpendicular; or 2. "The arm may have been only partially flexed in the upper arm, and hanging at the side, the wounded party having his back toward the party firing the shot"; but the general tenor of his testimony was to the effect that he inclined to the opinion that the wound was received while the defendant was in this latter position. The court erred in the admission of this evidence. The subject-matter of the inquiry was not one in relation to which the opinion of an expert can be properly received. The position of the wound being given, and the course taken by the bullet known, the jury was fully as competent to determine the relative positions of the parties to the difficulty as was the witness. (*People* v. *Kennedy*, 39 N. Y. 245; *Cooper* v. *State*, 23 Tex. 331; *People* v. *Westlake*, 62 Cal. 303.)

Nor can we agree with the attorney-general and associate counsel for the people, that the admission of this incompetent evidence was a harmless error, and therefore without prejudice to the appellant. It went to sustain the theory of the people in relation to the pivotal point in the case, and at the same time to discredit the testimony of the defendant. The defendant testified, in effect, that he did not draw his weapon or fire until after he had been shot by the deceased; that after firing the first time he continued to face the deceased, at the same time backing to and against the door, and while thus backing he shot at the deceased again. On the other

hand, the theory of the prosecution seems to have been, that the defendant fired the first shot, and then turned and ran, and while running toward the door was shot by the deceased; and in this connection, Brown, a witness for the people, who was present and engaged in the difficulty, and was himself knocked down by the defendant, testified: "I don't know who drew his pistol first. I know that during the shooting Mr. Smith started to run, and ran fast. Q. Did he turn his back, or back out? A. Turned his back." If the testimony of this witness is true, then the deceased must have received his mortal wound before the defendant turned his back upon him and started to run away, and if the defendant was shot, as Dr. Hayden seemed to think more probable, while his arm was hanging down by his side and his back turned toward the deceased, the inference would be, that he was shot while running away in the manner described by the witness Brown, and that the testimony of the defendant, that he did not fire his weapon until after he was himself shot, was therefore untrue. In this state of the case, we do not think it can be said, with any certainty, that this incompetent evidence did not have an influence upon the minds of the jurors in reaching a verdict, and for the error in admitting it the judgment must be reversed.

Judgment and order are reversed.

BEATTY, C. J., HARRISON, J., and SHARPSTEIN, J., concurred.

McFARLAND, J., dissenting.— I dissent. Dr. Hayden was examined as a witness in chief for the prosecution, — not in rebuttal; so that whether or not that part of his testimony objected to was of any importance could not be determined before the evidence of the defendant was introduced. At the time of the homicide, defendant received a pistol-wound inflicted by the deceased, and Dr. Hayden was first properly asked about that wound, — what part of the body it was in, its size, the points of

entry and exit, etc.   He testified that it was on the inner
side of the left forearm, a little below the elbow.   Then
the prosecution, with the approval of the court and
against defendant's objection, made an excursion into
the doubtful domain of expert testimony.   The tran-
script relates what occurred, as follows: —

"Q. Will you state, if you can, from your examina-
tion of this man's arm and your familiarity with gun-
shot-wounds, if you are familiar with them, in what
position, in your judgment, this man's arm was at the
time that wound was received?

"*Mr. Hinds.* — We object to that, on the ground that
it is incompetent.

"*The Court.* — Let him answer the question.

"*Mr. Hinds.* — We except.

"A. It would be one of two positions, provided he
was on his feet.   If he was on his back or on the ground,
it might be another position.   If he was on his feet, I
should say some such position as that or this way, either
one.   It could not be this way, because the ball would
have entered his body some place, and it would have
to be well over this way, in order to miss the shoulder.

"Q. It was either the way you describe or turning
around with the arm down?   A. With the arm down
this way.   I rather think this way, because the ball
seemed to pass from rather that side toward the center.

"Q. Well, now, suppose that you are there, and I am
here, and I am going away, either running or walking
fast, would you say that the ball could have entered?

"*Mr. Hinds.* — The same objection goes to all these
questions.

"*Mr. Foote.* — Would it enter there and come out that
way, entering the same position relatively?

"*Mr. Hinds.* — Same objection, ruling, and exception.

"*Mr. Foote.* — Is that the fact?   A. Yes, sir; very
similar; very much that position.

"Q. What arm was it?   A. The left arm."

At the end of this testimony is appended a note as
follows: —

XCIII. CAL.—29

"*Note.* — The above witness, Dr. Hayden, in giving his testimony, illustrated the two positions testified to by him, viz.: 1.' With the forearm flexed almost to a right angle to the upper arm, and the elbow carried in front of and well toward the right side of the trunk, the trunk being inclined on its perpendicular axis to the right also; so the ball on its exit would not enter the trunk or the right upper extremity, — that is, the wounded man should stand with his side toward the discharged weapon. 2. Or the arm may have been only partially flexed in upper arm, and hanging at the side, the wounded party having his back toward the party firing the shot."

I do not deem it necessary to determine definitely whether or not this ruling of the court was, in the abstract, erroneous, because it is apparent that the appellant was not injured or prejudiced by it. As before stated, the defendant was himself wounded at the time of the homicide. The deceased fired at defendant either before or after the shot by which defendant killed the deceased. The theory of defendant, and his subsequent testimony when on the witness-stand, was, that the deceased fired first, and that defendant then killed him in self-defense. Now, if when defendant testified it had appeared that his testimony was in conflict with the former testimony of Dr. Hayden, — that is, if the deceased could not have fired first and hit defendant in a position in which Dr. Hayden thought he must have been, — then appellant might have been prejudiced by the testimony of Dr. Hayden, which is claimed to have been erroneously admitted. But there was no such conflict. Appellant's theory and testimony were entirely consistent with the said testimony of Dr. Hayden. If appellant had contended or testified that he was facing deceased when the latter fired, some importance might have attached to Hayden's testimony. But there was no such testimony. The appellant, when on the witness-stand, first described the difficulty between the deceased and himself over a game of cards, and some blows between

them, and after speaking of a man, naming Brown, who was present, said as follows: "As I came out I expected to find him in front of me, but I didn't. I turned around as I came out, and kind of looked to see where he was. He was at my left." Further on he says: "I shoved Brown back that way, and as I looked around again, Williams had his gun down on me, throwed his gun down on me and shot. Just before he shot, — as he was about to shoot, — *I turned* and jumped sideways, and started to get my gun out, and he shot." And again he says: "I felt the shot strike my arm, felt my arm kind of drop, and I was getting my gun out at the same time. I got my gun out just as quick as I could, *and turned* and shot at him." Now, there is nothing in these statements — and there was no different testimony — that is not entirely consistent with the testimony of Dr. Hayden. There was nothing in Hayden's testimony which could have prevented the jury from believing the story of the appellant, or which could have influenced them in any manner, when weighing appellant's testimony. I am satisfied, therefore, that the testimony objected to could have had no influence upon the conclusion of the jury.

GAROUTTE, J., dissenting. — I dissent.

While the authorities cited by Mr. Justice De Haven beyond question determine that the testimony of Dr. Hayden was incompetent, still I am unable to see how the defendant was prejudiced thereby. The theory of the prosecution at the trial was, that the defendant had his back turned toward the deceased at the time he received the wound in the arm. The theory of the defense was, that the defendant was standing with his side to the deceased, and his left arm raised to a certain angle, at the time he received the wound. The doctor, as an expert, testified that the defendant could have been in either one of those two positions at the time he received the wound; consequently, I do not perceive how the defendant was prejudiced by the admission of the testimony.