[Crim. No. 83.   Third Appellate District.—April 27, 1909.]

# THE PEOPLE, Respondent, v. JESSE HEACOCK, Appellant.

MURDER—CAUSE OF DEATH—ACCIDENT OR CRIMINALITY — QUESTION WHOLLY FOR JURY.—In a prosecution for murder, when the vital question at issue is whether the cause of the death was by accident, as claimed by the defendant, or by criminal violence, the cause of the death is wholly a question of fact for the jury to determine, and is not the proper subject of expert testimony.

ID.—CIRCUMSTANTIAL EVIDENCE OF CRIMINALITY—INADMISSIBLE EVIDENCE OF MEDICAL EXPERT EXCLUDING ACCIDENTAL CAUSE OF DEATH.—Where the evidence tending to connect the death of the deceased with the defendant as a criminal cause was wholly circumstantial, it was error to allow a physician, who had testified to the character of the wounds of the deceased and their position, and marks of blood on the body, to state his opinion as a medical expert that the cause of the death was not accidental.

ID.—INADMISSIBLE EVIDENCE OF TESTIMONY OF DEFENDANT BEFORE CORONER—EXPLANATION—REBUTTAL.—The court properly excluded the testimony of the defendant given before the coroner, either for the purpose of explaining the condition he was in when he gave it, or for the purpose of rebutting the testimony of witnesses as to statements made by him.

ID.—TESTIMONY OF DEFENDANT'S WIFE AT INQUEST—CROSS-EXAMINATION OF CORONER.—When the wife of the defendant was present in

court, the court properly excluded her testimony taken at the inquest, when offered upon cross-examination of the coroner.

Id.—Misconduct of District Attorney—Remarks on Failure of Defendant's Wife to Testify.—As the case must be newly tried, the question is not determined whether the district attorney was guilty of misconduct in commenting on the failure of the defendant's wife to testify; but the district attorney is advised to refrain from such remarks in future. The reason which underlies the provision of section 1323 of the Penal Code applies with much force to the wife, who is made incompetent to testify in a criminal action for or against her husband except both consent, and it would be improper to comment upon defendant's refusal to consent; and when it appears that defendant and his wife were jointly charged with murder before the magistrate, that fact emphasizes the impropriety of commenting upon her failure to testify.

Id.—Session of Trial Court on Saturday Afternoon.—*Held,* that, under the existing state of legislation, though this cause, which involves the question of a session on Saturday afternoon, is reversed for other reasons, this court would suggest to trial courts that it will be safer to treat Saturday afternoon as a legal holiday until the question has been determined.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

L. Gonsalves, Weldon & Held, and J. E. Pemberton, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, for Respondent.

CHIPMAN, J.—Defendant was convicted of murder of the second degree and was sentenced to imprisonment for the period of fifteen years. He appeals from the judgment and from the order denying his motion for a new trial.

Defendant and his wife were living in a house belonging to deceased, Fred Steinhart, in the town of Caspar, Mendocino county, and deceased occupied a room in the same building. He was a laborer, working in a lumber camp, from which he had returned in the evening on May 4, 1908, the day of his death. So far as disclosed by the evidence, he was last seen alive about the hour of 7 P. M. of that day on his

way to his room. He made some small purchases at the store of the Caspar Lumber Company and from there went to a saloon, where he had one or two drinks of beer and purchased fifteen cents' worth to take with him. He was somewhat intoxicated, though not staggeringly drunk. He was not again seen by any witness at the trial until about 9 o'clock, two hours later, when his dead body was found lying on the floor of the sitting-room occupied by defendant and his wife, both being present, when the neighbors first became aware of the death of the deceased. A stairway led from this sitting-room to the upper story where there was a room occupied by deceased, and opposite this stairway door a lounge in the sitting-room was situated, and about six or seven feet distant therefrom. The door mentioned opened toward the stairs into a narrow space about its width and the stairway continued from this landing or space nine steps to a landing and turned a right angle continuing five steps to the upper floor. The deceased was found lying with his feet in the stairway doorsill and his head about two feet from the lounge. The first witness called as to the appearance of the body was F. H. Sanborn, a practicing physician and surgeon of the place. He testified to having made an examination of wounds he found on the head of deceased, on the night of May 4th, about the hour of half past ten; that he did not strip the body or examine it; that he found a wound on top of the head and another "right behind the lobe of the left ear" and he also "noticed a discoloration of the left eye"; that he found considerable blood around the body and that "the face was badly swollen." He also testified that the defendant, who was present, "asked me to look at the corner of the lounge, to notice the hair.". . . "He directed me at once to this corner here (pointing) lock of hair right there. He did not call my attention to any blood on the lounge." He further testified: "I did not interfere with the body any more, you know, because I did not want to interfere with the coroner. . . . I do not think there was sufficient loss of blood to cause the death of Steinhart." He was not afterward called to aid in the autopsy and saw no more of the body.

1. The following proceedings were had:

"Q. I will ask you whether or not in your opinion the bruises or wounds that you observed upon the head and face of Steinhart were sufficient to cause his death? A. Well,

allowing for his age I would say yes, the wounds were sufficient to cause death.

"Q. I will ask you whether or not in your opinion the wounds and bruises you perceived and found upon the head and face of Steinhart could have been made by a person falling against the head of this lounge?"

"Mr. Pemberton: We object to that on the ground it is calling for the opinion and conclusion of the witness upon matters not the proper subject of expert testimony."

"The Court: I overrule the objection."

"Mr. Pemberton: We save an exception."

"A. I believe not."

"Q. I will ask you whether or not in your opinion as a physician and surgeon, the wounds and bruises that you saw upon the face and head of Steinhart and the hemorrhage that you observed there might have been caused by a person falling down the stairway indicated upon this diagram here, which has been testified to be six feet in height to the first landing?"

"Mr. Pemberton: We object to that on the ground it calls for a conclusion and opinion of the witness upon a matter not a proper subject of expert opinion, and upon the further ground that it assumes that the man fell down from the landing, or somebody said that he did, for which there is not a particle of proof in the case."

"The Court: I overrule the objection."

"Mr. Pemberton: We save an exception."

"Witness answering: I believe not."

He was afterward asked on cross-examination whether his opinion above given was as a layman or as a physician and answered: "That is my personal opinion both ways."

It is urged that this was prejudicial error and with this contention we are constrained to agree. In the case of *People* v. *Westlake,* 62 Cal. 303, a medical witness who had made a *post mortem* examination of the body of the deceased was asked this question: "State from the examination you gave the wound, the course of the ball, and the condition of the deceased, whether, if he were moving in a northwesterly direction, or standing facing a northwest direction, he could have received that wound from the pistol shot fired by a person standing north of him and facing south?" The supreme court said: "Whether the wound of which deceased died

could have been inflicted by a pistol shot fired by the defendant from a certain direction, was a fact to be found by the jury from the evidence of the circumstances in which the homicide was committed, or to be inferred from the relative position of the parties when the shot was fired; it was not such a matter of science or skill as required the opinion of an expert." In *People* v. *Smith,* 93 Cal. 445, [29 Pac. 64], the defendant was charged with murder and the defense was that in shooting the deceased the defendant, who was also shot in the encounter, acted in self-defense, and in the determination of this question it became material to ascertain the position in which the defendant was at the time when he was shot. A witness, who was a physician and surgeon, was called by the people and was asked this question: "Will you state, if you can, from your examination of this man's (the defendant's) arm and your familiarity with gunshot wounds, if you are familiar with them, in what position in your judgment, this man's arm was at the time that wound was received?" Over objection the witness was allowed to answer. The supreme court said: "The court erred in the admission of this evidence. The subject-matter of the inquiry was not one in relation to which the opinion of an expert can be properly received. The position of the wound being given, and the course taken by the bullet known, the jury was fully as competent to determine the relative positions of the parties to the difficulty as was the witness." In *Kauffman* v. *Maier,* 94 Cal. 269, 281, [29 Pac. 481, 484], a machinist, conversant with machinery, was asked certain questions, as to the condition of a certain shaft that had caused the injury complained of, and of its effect when brought in contact with clothing and whether dangerous or not. The supreme court held that it was error to admit the testimony. Said the court: "Such questions are to be determined by the jury themselves, either from their own experience in matters of common observation, or from all the evidence in the case, and cannot be asked of witnesses, even if such witnesses are experts in some particular art or science. (*Sappenfield* v. *Main St. R. R. Co.,* 91 Cal. 60, [27 Pac. 590].) If the court permits the jury to be influenced by the judgment of such witnesses, it deprives the litigants of their right to have the jury render its verdict upon the facts in the case, and to this extent substitutes the judg-

ment of the expert for what should be the judgment of the jury.'' In the case of *People* v. *Lemperle*, 94 Cal. 45, [29 Pac. 709], a medical witness was permitted to give an opinion as to the distance of the muzzle of the pistol from the wounded man when fired. The court said: ''That the ruling was erroneous, there can be no doubt. A physician is not, as such, an expert upon such matters. If he found that the flesh was burned or contained unburned powder, he would have known that the pistol must have been near, but this is matter of common observation, and not a matter of special knowledge. The facts being stated, it was for the jury to judge.'' (Citing *People* v. *Westlake*, 62 Cal. 303; *People* v. *Smith*, 93 Cal. 445, [29 Pac. 64], 4 Pac. C. L. J. 213.)

In the case at bar the vital question at issue was the cause of Steinhart's death—whether by accident, as was claimed by defendant, by his having fallen down stairs, or by striking his head against the lounge in the sitting-room, or in some other accidental manner, or whether the cause of his death was by criminal violence administered by some person. The evidence connecting defendant with Steinhart's death was wholly circumstantial and its strength depended very much upon eliminating as a probable or possible cause of death the fact claimed that he was injured by accidentally falling down stairs or by his head coming in contact with the lounge in falling. These were matters for the jury to determine from the facts and circumstances proven and were not the proper subjects of expert testimony. As was said in *Kauffman* v. *Maier*, 94 Cal. 269, [29 Pac. 481], to permit the jury to be influenced by the judgment of such witnesses would deprive the defendant of his right to have the jury render its verdict upon the facts in the case, and to this extent would substitute the judgment of the expert for what should be the judgment of the jury. Obviously, the evidence was prejudicial.

2. Error is claimed because the court refused to allow defendant to introduce the testimony of defendant taken at the examination before the coroner, which was offered while a witness for the prosecution was under cross-examination by defendant's counsel, for the purpose of ''explaining the condition defendant was in when he gave it.'' We see no error in this ruling. The defendant could have taken the witness stand had he desired to make explanation. Defend-

ant offered this testimony several times for the purpose of rebutting testimony of witnesses as to statements made by the defendant. The refusal of the court to admit the testimony was proper.

3. During the cross-examination of the coroner called by the prosecution, defendant offered in evidence the testimony of defendant's wife taken at the inquest. The court very properly refused its admission. She was present at the trial. Her testimony taken at the inquest was not admissible.

4. During the opening argument of the assistant district attorney, Mr. Jenkins, he addressed the jury, in part, as follows: ''If the man had fallen down the stairway as he stated, an accident had befallen him or happened, gentlemen of the jury, is there anything about it he would want to cover up? Is there anything about it he wouldn't want his wife to testify to? Gentlemen of the jury, she is here today, why doesn't she give you an explanation of it?''

Defendant's counsel objected that the district attorney ''has no right to comment upon the failure of the wife to take the stand or anybody else. . . . And we save an exception to the very improper comment made by the assistant district attorney, and ask the court to instruct the jury to disregard that comment and consider it as never having been made. The wife had the right to stay off the stand, and it is their duty to hold this not in the least against the defendant.'' Mr. Jenkins: ''As to the defendant, I say I have nothing to say, he has the right to stay off the stand. Mr. Pemberton: We save an exception to this. By the Court: Proceed with the argument. Mr. Pemberton: And we save our exception.'' The court took no other action and the incident was closed at this point. Section 1323 of the Penal Code provides that the neglect or refusal of the defendant to be a witness ''cannot in any manner prejudice him, nor be used against him on the trial of the proceeding''; and we have held it error for the district attorney to comment upon the defendant's failure to testify. (*People* v. *Morris*, 3 Cal. App. 1, [84 Pac. 463].) But the section makes no similar provision as to the failure of the wife of a defendant to testify, though section 1322 does make her incompetent, except by the consent of both husband and wife.

The question is a new one so far as we are advised. As the case must go back for a new trial, it is perhaps unnecessary

to go further than to advise that the district attorney refrain from such comment hereafter. The reason which underlies the provisions of section 1323 applies with much force to the wife, who is made incompetent to testify for or against her husband in a criminal action, except both consent. The wife may be willing to testify, but the husband may not consent and to put him in the position of refusing and subjecting his defense to comments for availing himself of a statutory right might be very prejudicial. It was in evidence before the jury that both defendant and his wife were charged with the murder of Steinhart in the complaint filed with the magistrate, which would seem to emphasize the impropriety of commenting upon her failure to testify.

5. It appeared that the evidence closed and the argument to the jury was completed in the forenoon of Saturday, July 18, 1908, in time for the court to have instructed the jury before noon. The defendant called attention to the fact that Saturday afternoon was a holiday and requested the court to instruct the jury and submit the case before the beginning of the holiday. The court denied the request, to which defendant excepted, and thereupon the court adjourned until 2 o'clock P. M. and then instructed the jury and submitted the case to them. After having retired and while deliberating upon their verdict the jury requested (but at what time does not appear) that the instructions be sent to the jury-room and the same instructions which had been read to the jury were so sent. The legislature amended section 10 of the Code of Civil Procedure in 1907 by adding the following: "Every Saturday from twelve o'clock noon until twelve o'clock midnight is a holiday as regards the transaction of business in the public offices of this state, and also in political divisions thereof when laws, ordinances, or charters provide that public offices may be closed on holidays; *provided,* this shall not be construed to prevent or invalidate the issuance, filing, service, execution or recording of any legal process or written instrument whatever on such Saturday afternoons." (Stats. 1907, p. 561.) The constitution provides that the supreme court "shall always be open for the transaction of business," article VI, section 2, but the provision as to superior courts, article VI, section 5, reads: "They shall be always open (legal holidays and non-judicial days excepted)." . . . "Injunctions and writs of prohibition may

be issued and served on legal holidays and non-judicial days."
Section 134 of the Code of Civil Procedure provides that "No
court shall be open, nor shall any judicial business be trans-
acted, on Sunday (naming also other holidays) except for
the following purposes: 1. To give, upon their request, in-
structions to a jury when deliberating on their verdict.
2. To receive a verdict or discharge a jury. . . . Provided,
that the Supreme Court and the Superior Courts shall always
be open for the transaction of business; and provided further
that injunctions and writs of prohibition may be served on
any day."

It was held in *People* v. *Town of Loyalton,* 147 Cal. 775,
[82 Pac. 620], that "all transactions not within the statutory
prohibition may be carried on as on any other day"; and in
*People* v. *Soto,* 65 Cal. 621, [4 Pac. 664], it was held that
the legislature may allow or disallow the transaction of all
or any class of judicial business on legal holidays and that
section 5 of article VI of the constitution does not in terms
prohibit any legal business on holidays. In *Heisen* v. *Smith,*
138 Cal. 216, [94 Am. St. Rep. 70, 71 Pac. 180], it was said
that "in this state the transaction of 'judicial business' on
Sunday or holidays is forbidden (Code Civ. Proc., sec. 134),
but that these terms cannot be extended to the service of pro-
cess, or other ministerial acts." *Reclamation District* v.
*Hamilton,* 112 Cal. 603, [44 Pac. 1074], points out, without
reconciling the apparent conflict between the provisions of
the constitution and those found in section 134 of the Code of
Civil Procedure, *supra,* the statute declaring that the supreme
and superior courts "shall always be open for the transaction
of business" and the constitution, that the superior courts
shall always be open (legal holidays and nonjudicial days
excepted). Section 1142 of the Penal Code provides: "While
the jury are absent, the court may adjourn from time to time,
as to other business, but it must nevertheless be open for
every purpose connected with the case submitted to the jury
until a verdict is rendered or the jury discharged."

There is some force in the suggestion of the attorney gen-
eral that the amendment of section 10 of the Code of Civil
Procedure does not refer to court proceedings. Even so,
there remains the constitutional provision that superior courts
are always open except on holidays, and these courts uni-
formly refrain from transacting judicial business on such

days. (See *Heison* v. *Smith,* 138 Cal. 218, 219, [94 Am. St. Rep. 70, 71 Pac. 180].) The point is not likely to again arise in this case and we do not decide it.

Some other alleged errors are assigned, but they relate to matters which in all probability will not again occur and need not be noticed.

The judgment and order are reversed and the cause remanded for a new trial.

Hart, J., and Burnett, J., concurs.

### SUPPLEMENTAL OPINION.

THE COURT.—Since the foregoing opinion was filed our attention has been called to an amendment of sections 134 and 135 of the Code of Civil Procedure, which was passed the day after section 10, Code of Civil Procedure, was amended as set forth in the opinion in which section 134 was quoted as it existed prior to 1907. The amendment of sections 134 and 135 will be found in Statutes of 1907 at pages 681 and 682. Section 134 by that amendment reads: "No court other than the Supreme Court, must be open for the transaction of judicial business on any of the holidays mentioned in section ten, except for the following purposes: 1. To give upon their request, instructions to jury when deliberating on their verdict; 2. To receive a verdict or discharge a jury; 3. For exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature.

"Injunctions and writs of prohibition may be issued and served on any day."

Section 135, as amended, reads: "If any day mentioned in the last section happen to be the day appointed for the holding or sitting of a court, or to which it is adjourned, it shall be deemed appointed for or adjourned to the next day." We said in the opinion that it was not necessary to decide the question; nor is it, in view of our decision on other questions. But under the present state of legislation we venture to suggest to trial courts that it would be safer to treat Saturday afternoon as a legal holiday until the question has been determined.