[Crim. No. 1142. Second Appellate District, Division Two.—December 31, 1924.]

## THE PEOPLE, Respondent, v. MARGARET B. WILLIS, Appellant.

[1] CRIMINAL LAW — MURDER—FACT—APPEAL.—In a prosecution for murder, the determination by the jury of questions of fact presented to it is conclusive on appeal.

[2] ID.—EVIDENCE—ADMISSIONS—PROVINCE OF JURY.—In such prosecution, where the testimony of various witnesses as to admissions made by defendant was not denied, and it was submitted, under full instructions, with all the other evidence in the case, it was solely within the province of the jury, if the different versions of such witnesses did not completely harmonize, to believe or disbelieve the portions which they might upon consideration of the whole case decide to accept or reject.

[3] ID.—ADMISSIONS.—In such prosecution no error was committed in admitting testimony as to admissions of the defendant, where there was no showing that any of her statements were other than voluntary admissions, and when they were offered no objection was interposed, and it appeared that defendant made the statements without solicitation except for questions that were asked of her as a result of her voluntary surrender; and even had defendant been asked to relate the facts, without promises or coercion, her statements would have been admissible.

70 Cal. App.—30

[4] ID. — MOTIVE—EVIDENCE.—In such prosecution, where it was the theory of the prosecution that defendant was in financial straits at the time of the homicide, and that she killed the deceased in order to avoid paying him for an automobile which she had agreed to purchase from him, and that she pledged the automobile as security for money which she owed a third party for furniture, and from defendant's own statements on different occasions it appeared that she had said she would obtain the money with which to pay deceased from commissions due her in real estate transactions, that she would get it from her sister, and again that it consisted of small amounts which she had saved, and that she later declared that she had paid deceased a certain sum of money which, however, was never found among his effects, it was proper to admit the testimony of a witness as to money which he had loaned defendant at various times, and also evidence of her indebtedness upon said furniture, and as to the automobile transaction with defendant, that the jury might weigh and compare her extrajudicial statements with the other evidence in the case, and conclude whether defendant committed the homicide in self-defense or in furtherance of selfish designs.

[5] ID.—EVIDENCE—MOTIVE.—Evidence relevant to show motive for the commission of crime charged is always admissible, and often valuable.

[6] ID.—VERDICT — EVIDENCE — APPEAL.—If there is enough evidence for the prosecution to warrant a verdict of guilty it cannot be disturbed upon appeal unless there is such a disparity in the testimony of witnesses for the People as to render their evidence inherently improbable or necessarily unworthy of belief.

[7] ID.—EVIDENCE—ADMISSIONS.—In such prosecution, testimony as to a conversation between the widow of deceased and others, had in the presence of the defendant, at the city jail, which showed that a telephonic conversation, in reference to the sale of an automobile, had occurred between deceased and the defendant, and that defendant made no denial of the telephonic conversation, was proper, for if the statement as to the telephonic conversation was untrue, the failure of the defendant to reply by way of a denial was evidence tending to show a tacit admission by defendant of the truth of the statement, the weight of which was a question of fact for the jury.

4.  See 13 R. C. L. 910; 13 Cal. Jur. 685.

7.  Admissibility in evidence of conversations by telephone, notes, 1 Ann. Cas. 802; 9 Ann. Cas. 170; 20 Ann. Cas. 705; Ann. Cas. 1916E, 977; 17 L. R. A. 440.

Necessity and sufficiency of identification as foundation for admission of conversation or communication by telephone, notes, 6 L. R. A. (N. S.) 1180; L. R. A. 1918D, 720.

[8] ID.—OPERATION OF GUN — DIFFICULTIES IN DISCHARGING—EXPERT TESTIMONY.—In such prosecution, it was proper to permit a witness, who had qualified as an expert and who had made experiments with the gun with which the deceased was killed, to give testimony concerning the operation of the gun and the difficulties which he encountered in attempting to fire it from the position which other witnesses had testified the defendant claimed to have occupied, and to illustrate these matters before the jury.

[9] ID.—EVIDENCE — EXPERTS.—A nonexpert witness may not express an opinion as to whether a person could have done any act within the range of common knowledge and experience, as the jury are as competent as the witness to draw the inference from the facts; and for the same reason an expert witness will not be permitted to express his opinion as to conclusions from matters of common observation and experience.

[10] ID.—EXPERTS—WHEN OPINION MAY BE EXPRESSED.—One skilled in some art, trade, or science, having knowledge and experience in relation to matters which are not within the knowledge of men of average intelligence, education and experience, may express an opinion on a state of facts within his specialty and which is involved in the inquiry.

[11] ID. — EXPERIMENTS WITH FIREARMS — EVIDENCE. — Experiments with firearms may be made in homicide cases, and the results proven at the trials as tending to show the guilt or innocence of the accused. Such results, however, are not conclusive, but are competent and admissible, and their weight is for the jury to determine.

[12] ID.—DEGREE OF DOUBT — INSTRUCTIONS.—In such prosecution, a requested instruction that "When determining her guilt or innocence, if there is any doubt in the minds of the jury as to the actions and statements of the defendant, it is the duty of the jury to give her the benefit of the doubt," does not correctly state the law.

[13] ID.—REQUESTED INSTRUCTIONS COVERED BY GIVEN INSTRUCTIONS—REFUSAL OF JUSTIFIED.—In such prosecution, the trial court properly refused to give instructions requested by defendant which were covered by those which were given, and which correctly stated the law of the case.

[14] ID.—DELIVERY OF EXHIBITS OR INSTRUCTIONS TO JURY—TIME.—There is no requirement that the physical delivery of exhibits or

8. Subjects and admissibility of expert testimony, note, 59 Am. Rep. 176. See, also, 13 Cal. Jur. 716.

9. See 11 R. C. L. 565; 10 Cal. Jur. 948.

10. See 11 R. C. L. 572; 10 Cal. Jur. 958.

instructions to the jury must be made in the courtroom before they retire.

[15] ID.—NEW TRIAL — AFFIDAVITS—EVIDENCE.—An affidavit of defendant's counsel wherein it is alleged that one of the jurors at first voted for a verdict of not guilty and insisted upon reading the testimony of a certain witness and the widow of deceased, that a request for said testimony was conveyed to the court, but was denied, and that two other jurors then "by coercion, abuse, undue influence, misinformation and insults" caused her to change her vote and agree upon a verdict for conviction, which affidavit furnishes no light as to the source of affiant's information which could not have been otherwise obtained than from hearsay, is entitled to no weight, and is not competent or proper evidence upon a motion for a new trial.

[16] ID.—RETIREMENT OF JURORS—REQUEST FOR TESTIMONY—SECTION 1137, PENAL CODE.—A request by the jury, after it had been instructed and had retired, that it be permitted to receive the testimony of two of the witnesses, falls within the inhibition of section 1137 of the Penal Code.

[17] ID.—SPECIFICATIONS OF ERROR—APPEAL.—Mere naked statements that the trial court erred in making certain enumerated rulings, without stating reasons why errors are assigned, will not be considered on appeal.

---

(1) 17 C. J., p. 202, n. 77, p. 255, n. 93.   (2) 16 C. J., p. 930, n. 93.   (3) 16 C. J., p. 629, n. 23.   (4) 30 C. J., p. 187, n. 38.   (5) 30 C. J., p. 179, n. 37.   (6) 17 C J., p. 269, n. 4.   (7) 16 C. J., p. 642, n. 35.   (8) 16 C. J., p. 753, n. 32.   (9) 16 C. J., p. 748, n. 51. (10) 16 C. J., p. 748, n. 50.   (11) 16 C. J., p. 563, n. 30, p. 756, n. 26, 28, p. 775, n. 97.   (12) 16 C. J., p. 992, n. 12.   (13) 16 C. J., p. 1063, n. 85; 30 C. J., p. 336, n. 70.   (14) 16 C. J., p. 1084, n. 63, p. 1085, n. 76 New.   (15) 16 C. J., p. 1228, n. 53, p. 1229, n. 60. (16) 16 C. J., p. 1089, n. 55.   (17) 17 C. J., p. 213, n. 27.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Crail, Judge. Affirmed.

The facts are stated in the opinion of the court.

S. S. Hahn for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman and H. H. Linney, Deputy Attorney-Generals, for Respondent.

CRAIG, J.—The appellant was charged by indictment with having murdered one Dr. Beecher B. Baldwin on or

about the eleventh day of April, 1924. She admitted having killed him, but her defense was that he attacked her in her apartment while he was intoxicated, and that she shot him in defense of her person and her honor. A verdict was returned by the jury finding her guilty of murder in the first degree, with a recommendation of imprisonment for life, and she appeals from the judgment and order denying her motion for new trial.

Many grounds for reversal are assigned in appellant's briefs, which consist of the assertion of errors in rulings upon the admissibility of evidence, in instructing the jury, and alleged misconduct of the jury.

A considerable portion of appellant's argument is devoted to alleged errors in the admission of contradictory statements testified by various witnesses to have been made by the defendant, and to the plausibility or weight of conflicting testimony, all of which were clearly admissible, and merely presented questions of fact for the final consideration of the jury. [1] Its determination of these questions is conclusive. [2] The defendant did not testify, and the testimony as to her admissions was not denied; it was submitted, under full instructions, with all the other evidence in the case, and if the different versions of various witnesses did not completely harmonize, it was solely within the province of the jury to believe or disbelieve the portions which they might upon consideration of the whole case decide to accept or to reject. (*People* v. *Truitt,* 49 Cal. App. 727 [194 Pac. 295]; *People* v. *Jurado,* 56 Cal. App. 481 [205 Pac. 696].)

[3] Exceptions to the testimony of witnesses as to admissions of the defendant are urged upon the theory that confessions obtained from a person while under arrest are liable to have been exacted by unfair methods. But there is no showing that any of her statements were other than voluntary admissions, and when they were offered no objection was interposed. Appellant's counsel subsequently objected to the reading of a portion of one such statement, but the objection was withdrawn with the remark, "Let everything go before the jury. It is all right. Go ahead." It is not contended that any such statements were not freely made and voluntary, and it appears from the record that appellant made them without solicitation except for questions that

were asked of her as a result of her voluntary surrender. Even had she been asked to relate the facts, without promises or coercion, her statements would have been admissible. (*People* v. *O'Brien,* 53 Cal. App. 754, 755 [200 Pac. 766].)

[4] It is further argued that the trial court erred in admitting over appellant's objection the testimony of one Webster as to money which he had loaned her at various times, evidence oral and documentary of her indebtedness upon certain furniture, and as to an automobile transaction which she admittedly had with the decedent. [5] Evidence relevant to show motive for the commission of the crime charged is always admissible, and often valuable. (*People* v. *Rongo,* 169 Cal. 71, 75 [145 Pac. 1017]; *People* v. *Durrant,* 116 Cal. 179 [48 Pac. 75]; *People* v. *Owens,* 132 Cal. 469 [64 Pac. 770].) It was the theory of the prosecution that appellant was in financial straits, and that she killed Dr. Baldwin in order to avoid paying him for an automobile which she had agreed to purchase from him, and that she pledged the automobile as security for $150 which she owed one Edward Othman for said furniture. Motions to strike out this evidence were also made upon the grounds that it was irrelevant, incompetent and immaterial, and not part of the *res gestae.* From appellant's own statements on different occasions it appeared that she had said that she would obtain the money with which to pay Dr. Baldwin from commissions due her in real estate transactions, that she would get it from her sister and again that it consisted of small amounts which she had saved; and she later declared that she had paid Baldwin $750, but the money was never found among his effects. Since she did not testify, it was incumbent upon the jury to weigh and compare her extrajudicial statements with the other evidence in the case, and conclude whether she committed the homicide in self-defense or in furtherance of selfish designs. [6] Having done so, if there be enough evidence for the prosecution to warrant a verdict of guilty it cannot be disturbed upon appeal unless there is such a disparity in the testimony of witnesses for the People as to render their evidence inherently improbable or necessarily unworthy of belief. (*People* v. *Brittan,* 118 Cal. 409 [50 Pac. 664]; *People* v. *Billings,* 34 Cal. App. 549 [168 Pac. 396].) Such is not the status of the evidence before us.

[7]   Another exception is taken to the admission in evidence of testimony which purported to quote a conversation between Mrs. Baldwin, the decedent's widow, and others, had in the presence of the defendant, at the city jail.   In this conversation the deceased was said by Mrs. Baldwin to have stated to Mrs. Willis over the telephone, among other things: "Well, if you are sure you will have the money to-morrow morning, I will make it a point to drop around there, but unless you could have the money, I would not have time to come over until the first of the week; . . . and we will fix up the transfer to-morrow morning."   There was considerable more conversation of a similar import, indicating that Dr. Baldwin was making arrangements to sell an automobile to Mrs. Willis and to receive the money therefor.   This witness testified to having related this to defendant in the presence of the latter's counsel, a stenographer, and a police officer.   Mrs. Baldwin was permitted to testify to this conversation which she said took place over the telephone, against the objection that it was irrelevant, incompetent, and immaterial and hearsay.   Appellant's contention is that the conversation took place between Mrs. Baldwin and a police officer; that the admission of such testimony was error because it was introduced for the purpose of entrapping the defendant into making a denial, but that there was no cause for response.   It is argued that mere silence when such a statement is made in the presence of one accused of crime is not evidence of guilt.   The witness testified further: "This is the conversation that I related in front of Mrs. Willis at the detective bureau; and I related it as the conversation that took place the night before."   "When I got through with this statement, everyone got up and left the room and left me there with Mrs. Willis; and I didn't say anything; and Mrs. Willis said—she sort of drew a long breath, and said, 'Well, Mrs. Baldwin, there isn't a thing I can say.' " If Mrs. Baldwin stated to the defendant or in her immediate presence that this telephonic conversation had occurred, it was clearly admissible (*People* v. *Piggott*, 126 Cal. 509, 513 [59 Pac. 31]), and if the statement in that regard was untrue, the failure of the defendant to reply by way of a denial was evidence tending to show a tacit admission by her of the truth of the statement, whose relevancy is apparent, and the weight of which was a question of fact for the jury.   (*Peo-

*ple* v. *Schoon,* 177 Cal. 678, 682 [171 Pac. 680] ; *People* v. *Amaya,* 134 Cal. 536 [66 Pac. 794].)

[8] It is contended that in permitting a certain witness to testify concerning experiments which were made with the gun with which the deceased was killed the court committed seriously prejudicial error. The testimony to which exception is especially taken is that of the witness Sellers. Several questions were asked of this witness which would have called for answers of an objectionable character, but which the court excluded. The substance of his testimony is that he assumed a position alleged to have been occupied by the defendant at the time of the shooting, facing another person in the position in which it is claimed the deceased was at that time. The head of the latter person was approximately eighteen inches above the floor. An explanation was made of the operation of the gun which was used by the defendant and of difficulties which he encountered in attempting to fire it from the position which other witnesses had testified the defendant claimed to have occupied. In testifying concerning these difficulties it appears from the transcript that the witness was demonstrating the use of the gun before the jury. Questions and answers involved in this objection are as follows:

"Q. Will you just explain to me, or demonstrate it, why it is difficult to discharge the gun with the wrist twisted?

"A. Of course, if the gun is held in this manner, it can be easily fired by pulling the trigger, and pressing this back safety. As the arm begins to turn in this manner (illustrating) there is, naturally, a lengthening of certain muscles in the arm here (indicating), and there is a limit to the degree that you can turn the gun, and the further you turn it—

"Q. Just a minute. Can you discharge that gun now?

"A. I can, with a great deal of effort. The further back I pull it this way toward me this way, the more difficult it would be."

Counsel for appellant contends that in allowing the witness to testify in this manner the trial court violated the principle laid down in the case of *People* v. *Salaz,* 66 Cal. App. 173 [225 Pac. 777], in which it is said:

"Dr. Wagner, over defendant's strenuous objections, was permitted to testify that in his opinion, based entirely upon the result of his examination of the body and the course

taken by the bullets, the man who did the shooting was in front and towards the left of the decedent. Asked by the district attorney if, from his examination of the body and the course of the bullets, he could tell in what position the decedent was when he was shot, the witness replied: 'In a general way I could. I can positively state that the man [who did the shooting] was in front and towards the left. He was not immediately in front, but what we might call diagonal towards the left and in front of the deceased.' . . .

"That grievous error was committed when Dr. Wagner was permitted to testify that he could 'positively state' that the man who did the shooting was in front 'and toward the left,' that 'he was *not immediately* in front, but what we might call *diagonal toward the left* and in front of deceased,' is clearly demonstrable. The question whether the direction of a gunshot wound in the body of a deceased indicates the relative positions of the person firing the shot and the person receiving it is not a matter of expert or opinion evidence, and it has been held by our supreme court that it is error to allow a physician to testify to his opinion upon that question." (Italics quoted.)

In the instant case the witness did not express any opinion concerning the positions of the deceased and defendant. He drew no conclusions at all except in connection with the gun and its operation. As to this it is not questioned that he qualified as an expert, nor can there be any doubt that this was a proper subject for expert testimony. The witness' statement that holding the gun in a certain position it was difficult to pull the trigger is merely a statement of fact, and, at the same time, an explanation of the mechanical operation of the firearm.

It does not appear that the witness gave any conclusions concerning his experiments when he and the other man assumed the positions on the floor to which he testified. His only answers bearing upon experiments with a gun, aside from explaining its mechanical operation, are those which we have quoted.

[9] A nonexpert witness may not express an opinion as to whether a person could have done any act within the range of common knowledge and experience, as the jury are as competent as the witness to draw the inference from the facts. (*People* v. *Helm*, 152 Cal. 532 [93 Pac. 99]; *People* v.

*Lowrie,* 4 Cal. App. 137 [87 Pac. 253].) And for the same reason an expert witness will not be permitted to express his opinion as to conclusions from matters of common observation and experience. (*People* v. *Heacock,* 10 Cal. App. 450 [102 Pac. 543].) **[10]** But one skilled in some art, trade, or science, having knowledge and experience in relation to matters which are not within the knowledge of men of average intelligence, education, and experience, may express an opinion on a state of facts within his specialty and which is involved in the inquiry. (16 Cor. Jur., p. 748, sec. 1532, citing *People* v. *Heacock, supra.*) **[11]** Experiments with firearms have frequently been made in homicide cases, and the results proven at the trials as tending to show the guilt or innocence of the accused. Such results are not conclusive, but are competent and admissible, and their weight is for the jury to determine. (*People* v. *Levine,* 85 Cal. 39, 43 [22 Pac. 969, 24 Pac. 631].)

**[12]** The court was asked to instruct the jury that "When determining her guilt or innocence, if there is *any* doubt in the minds of the jury as to the actions and statements of the defendant, it is the duty of the jury to give her the benefit of the doubt," but such is not the law, and the point having been fully correctly covered by the general charge and by other instructions requested by the appellant, further discussion of the subject is here unnecessary. **[13]** Other instructions requested by appellant which the trial court declined to give were covered by those which were given, and which correctly stated the law of the case. They were therefore properly refused. (*People* v. *Cox,* 29 Cal. App. 419 [155 Pac. 1010]; *People* v. *Wilson,* 29 Cal. App. 563 [156 Pac. 377].)

**[14]** It is contended that the jury received evidence outside of court, and after the case had been finally submitted to them, after the defendant and her counsel had departed. This matter was subsequently called to the attention of the trial court, and from the statement made by the judge it appears that as the jury left the courtroom it requested the exhibits and instructions. The court assembled them on the desk and ordered them delivered to the jury. The request by the jury, and the order of the court, were made in the presence of the defendant, and there is no showing that the jury received other evidence from the bailiff or otherwise. No authority is called to our attention, nor are we aware of

any, which requires the physical delivery of exhibits or instructions to the jury must be made in the courtroom before they retire.

[15] Counsel for appellant moved for a new trial, based in part upon an affidavit wherein he alleged that one of the jurors at first voted for a verdict of not guilty, and insisted upon reading the testimony of Webster and the widow of deceased; that a request for said testimony was conveyed to the court, but was denied, and that two other jurors then "by coercion, abuse, undue influence, misinformation and insults," caused her to change her vote and agree upon a verdict for conviction. Counsel's affidavit is the only evidence that was offered as to these alleged facts; it furnishes no light as to the source of his information, but it could not have been otherwise obtained than from hearsay. It was expressly held in *People* v. *Clark,* 183 Cal. 677 [192 Pac. 521], that such an affidavit is entitled to no weight, and is not competent or proper evidence upon a motion for new trial. [16] The same authority disposes of another contention, also based upon an affidavit of defendant's counsel, wherein it is made to appear that after the jury had been instructed and had retired it sent word to the court by the bailiff that it desired to receive the testimony of two of the witnesses. At all events, a request of that character falls within the inhibition of section 1137 of the Penal Code.

[17] As to many other criticisms of appellant they amount to nothing more than mere references to pages throughout a voluminous record where general objections appear, without argument or citation of authority. They are mere naked statements that the court erred in making certain enumerated rulings, without stating reasons why errors are assigned, and we are not called upon to institute an independent inquiry in order to furnish reasons for or against the correctness of the rulings. (*People* v. *Clark, supra.*)

The judgment and order denying the motion for new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1925.

All the Justices concurred.