[Crim. No. 864. In Bank.—March 26, 1903.]

## THE PEOPLE, Respondent, v. HORACE J. DOBBINS, Appellant.

CRIMINAL LAW—MURDER—SUPPORT OF VERDICT.—The evidence in this case is held sufficient to countervail the defendant's plea of self-defense, and to justify a verdict of guilty of murder in the first degree.

ID.—EVIDENCE—DYING STATEMENT.—The dying statement of the deceased, as to the facts connected with the shooting, is admissible in evidence when shown to have been made in contemplation of impending death from the mortal wound received from the defendant's pistol.

ID.—INSTRUCTIONS—DISTRUST OF FALSE WITNESS.—It is not error to instruct the jury substantially in the language of the code, as to the distrust of a witness who is false in one part of his testimony; although such instruction cannot be commended as a full or clear exposition of the meaning of the provision of the code on that subject. It is not improper to conform to the language of the code, and to omit what the code omits.

ID.—LAW OF SELF-DEFENSE.—It is not error to instruct the jury upon the law of self-defense in the language of the code; and if the defendant desired amplification of the instructions on that subject, he should have proposed further instructions thereupon.

ID.—CREDIBILITY OF WITNESSES—DEFENDANT'S TESTIMONY.—An instruction as to the credibility of witnesses and the weight to be given

to the defendant's testimony, which does not depart from the rules laid down in *People* v. *Van Ewan,* 111 Cal. 144, is not objectionable.

ID.—MISCONDUCT OF JURY—IMPEACHMENT OF VERDICT—AFFIDAVIT OF DEFENDANT—HEARSAY.—Jurors cannot impeach the verdict by showing that improper statements were made by some of them when deliberating upon the verdict; and an affidavit of the defendant which must necessarily rest upon hearsay from jurors cannot be received to show such misconduct.

APPEAL from a judgment of the Superior Court of Solano County and from an order denying a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

W. C. Burnett, and Louis P. Boardman, for Appellant.

Tirey L. Ford, Attorney-General, for Respondent.

HENSHAW, J.—Defendant was charged with the murder of one Eldridge B. Ball. The jury returned its verdict of guilty of murder in the first degree, and fixed the penalty at imprisonment for life. From the judgment and from the order denying him a new trial he appeals.

By the prosecution it was shown that defendant, deceased, and others were engaged in playing a game of draw-poker in the back room of a saloon. In the middle of a deal defendant, who suspected the deceased of cheating, suddenly said to him, "You are a son of a bitch." Deceased responded, "You are a liar, Jeff. I am no son of a bitch," and with that arose from his chair, his arms hanging loosely by his side. As he did so the defendant shot him twice, once in the shoulder and once in the abdomen, the latter wound being mortal, from the effects of which death shortly ensued. This evidence was sufficient to countervail against defendant's plea of self-defense, and to justify the verdict which the jury returned.

A dying declaration of deceased was admitted in evidence, and it is contended that the preliminary proofs upon behalf of the people were not sufficient to justify its admission. The deceased made two statements, under the following circumstances: Mr. Barcar, an attorney, had been called in, that the first statement might be in proper, legal form, and in the presence of Mr. Barcar, the doctor, the witness Young and

others, deceased made a brief statement, which was reduced to writing, to the effect that he had been shot by defendant Dobbins without cause or provocation. Mr. Barcar then departed from the room, communicated with the district attorney by telephone, and stated to him that he had taken down a very brief statement from the dying man. The district attorney then went to Ball's bedside, and there was given the second statement of the deceased, which statement was the one introduced in evidence. The interval of time between the giving of the first and of the second statement was about an hour or an hour and a half. Before the making of the first statement the deceased was suffering intense pain from the abdominal wound, and had been assured by the attendant physician that he was mortally injured and would soon die. The deceased stated that he was mortally wounded and felt that he was going to die, and appeared to realize that he had but a short time to live. The doctor told him that he could live but a short time, and that they had come there to take his dying statement. He said that he "felt assured that he was going to die," and that "he was satisfied of it." It was under these circumstances that the first statement by the deceased was made. Thereafter, the witnesses still remaining in the room, and only Mr. Barcar having withdrawn, the situation in other respects remaining unchanged, the district attorney came upon the scene and took the second declaration from the dying man. The district attorney was accompanied by Hyatt, a shorthand reporter. Hyatt testified that he made some notes of what took place at the time that he and the district attorney were there, but that he was not there for the purpose of taking the dying declaration; that he did not hear everything that was said because Mr. Ball was lying on the bed with his back to him and his face toward the district attorney, who was talking to him; he was not there as an official reporter, and the notes which he took were not taken officially, but as memoranda of what he heard, because he had nothing else to do. From these notes it appears that the district attorney questioned the dying man as follows: "Q. Dr. Stitt tells me that you are going to die. He has informed you so? A. Yes. Q. You understand that all hope is gone— you are going to die? A. Well, I presume that likely to be

the case.  Q. The doctor says—you understand all hope is
gone, do you?  A. Yes.  Q. You are going to die?  A. Yes.
Q. This wound is fatal and it is going to cause your death;
you understand that, do you?  A. Yes.  Q. Now, with that
in view, Mr. Ball, do you wish to make a statement as to the
facts connected with this shooting?  A. Yes, sir; I will make
the statement how it occurred and why, and the circumstances
as they occurred.''  This evidence was certainly sufficient to
support the introduction of the statement as having been made
in contemplation of impending death.  In *People* v. *Fuhrig,*
127 Cal. 412, substantially all of the evidence offered to sup-
port the admitted declaration was the statement of the doctor
to the woman that ''she would probably die,'' and this, as
was said in the opinion, was calculated to excite the hope of
living rather than to impress the patient with the conviction
that death was immediately impending.  But here the injured
man had been assured by the doctor that he was mortally
wounded and could not live—not that he would probably
die—and he had expressed his own conviction to the same
effect.  But an hour and a half at the most had intervened
between his first declaration upon the subject and the giving
of the statement which was introduced in evidence.  During
that time the attending physician and the other witnesses
remained by his bedside awaiting his dissolution.  There is
nothing to show that the conviction which he held at the time
of the giving of the first statement did not remain when he
gave the second.  But, to the contrary, his declarations to the
district attorney evince that he still was of the same belief.
The preliminary proof was, therefore, sufficient to warrant the
introduction of the declaration in evidence, and as no objec-
tion is made to the matter of the declaration we pass to the
next proposition urged by appellant.

The court instructed the jury as follows: ''A witness who
testifies falsely as to one fact in giving his testimony is to be
distrusted in other parts of his testimony.  If you find that
a witness has deliberately testified falsely in one part of his
testimony in this case, you have the right to reject the whole
of the testimony of that witness which is not shown by other
evidence in the case to be true.  I do not intimate to you that
any witness in this case has testified falsely, or that any wit-

ness has been impeached in his testimony in this case. These are matters exclusively within your province as jurors and not to be determined by the court." The provision of the code upon which this instruction is based is, "that a witness false in one part of his testimony is to be distrusted in others." (Code Civ. Proc., sec. 2061, subd. 3.) The first sentence of the instruction is substantially in the language of the code. In *People* v. *Plyler*, 121 Cal. 162, the court refused to give an instruction which was an accurate amplification and exemplification of the principle of law embraced in the code provision, and it was said that the court should not have refused the instruction because it was unobjectionable in point of law, and because the terse language of our statute, well understood by jurists, might be misleading to the non-professional mind; that the false swearing must be willful, and upon a matter material to the case. But nowhere has it been decided, nor indeed could it with reason be held, that it is error for the court to instruct in the language of our written law. This is substantially what the court here did, and so, while the instruction cannot be commended as a full or clear exposition of the meaning of the section of the code, still it cannot be said that it was error for the court in giving the law to have conformed to the language of the code, and to have omitted what that code itself omits.

The same may be said of the court's instructions upon the law of self-defense. These instructions were given in the language of the code, and if the defendant desired amplification of them he should have proposed instructions upon the matter.

Complaint is made of an instruction touching the credibility of witnesses and of the weight to be given to the testimony of the defendant, who was himself a witness. The instruction upon this point was couched in more conservative language than that employed in the instruction given in *People* v. *Cronin*, 34 Cal. 191, which instruction was there approved, and which approval this court, while discountenancing the practice, has felt compelled reluctantly to follow. The subject has received recent consideration in *People* v. *Van Ewan*, 111 Cal. 144, and here it only need be said that while reaffirming what is stated in the Van Ewan case, the

instruction given in the case at bar does not violate the rule of law there laid down.

Upon motion for his new trial defendant made affidavit that while the jury was considering the verdict some of the jurors stated, in the presence of the jury, "that the defendant was a bad egg and had been in trouble before, and if he were let loose he would be in trouble again in a short time;" and further that "the jury discussed and considered the question of the absence of the witness Jones, whose testimony was read at the trial, and it was stated by said jurors above named and other jurors in the presence of the jury that said witness Jones was spirited away and that his absence was brought about by the unlawful use of the money of the Dobbinses." In the nature of things it was impossible for the defendant to have known of these matters except upon hearsay. He does not pretend to give the source of his information. A juror could not so impeach his own verdict, nor could another by making such affidavit, do indirectly what the juror himself would not be permitted to do. (*Siemsen* v. *Oakland etc. Ry.,* 134 Cal. 494.)

The judgment and order appealed from are affirmed.

McFarland, J., Shaw, J., Angellotti, J., Van Dyke, J., and Lorigan, J., concurred.