[Crim. No. 2289.  In Bank.—September 14, 1920.]

## THE PEOPLE, Respondent, v. JAMES C. CLARK, Appellant.

[1] CRIMINAL LAW—MISCONDUCT OF JURY—READING NEWSPAPER ARTICLES — AFFIDAVIT OF ATTORNEY — INSUFFICIENT GROUND FOR NEW TRIAL.—In a criminal action, the affidavit of one of the attorneys for the defendant averring that one of the jurors had told him that he had read certain newspaper articles relating to the trial during the course thereof, and further averring on information and belief that other jurors had read the same article, is not admissible to impeach the verdict, and wholly insufficient to support an order for a new trial.

1. Reading newspapers by jury during trial as ground for setting aside verdict, notes, 6 Ann. Cas. 352; 12 Ann. Cas. 180; Ann. Cas. 1915C, 962.

[2] ID.—CREDIBILITY OF TESTIMONY—BELIEF OF JURORS AS MEN—INSTRUCTION.—Where the jury in a criminal case has been properly instructed as to the presumption of innocence and the doctrine of reasonable doubt, an instruction that they are to believe` as jurors what' they would believe as men, and that there is no rule of law that requires them to believe as jurors what they would not believe as men, cannot be said to be calculated to confuse the jury, or to be erroneous.

[3] APPEAL—ASSIGNMENT OF ERRORS—DISREGARD OF POINTS.—An assignment of error to all rulings on the evidence and in the giving of instructions does not call for consideration on appeal, in the absence of reference to the record, citation of authorities, ·and specification of particulars.

APPEAL from a judgment of the Superior Court of Yolo County and from an order · denying a new trial. W. A. Anderson, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. E. Strong and Neal Chambers for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

LAWLOR, J.—This is an appeal by the defendant, James C. Clark, from a judgment of conviction of murder of the first degree, calling for the death penalty, and from an order denying his motion for a new trial.

The defendant was accused of having, on June 11, 1919, in the town of Esparto, county of Yolo, killed and murdered one Richard Raevell.

It is shown by the record that the defendant made certain antecedent threats against the deceased. Carl Richardson, a butcher, testified that in a conversation with the defendant on the morning of June 10th, the latter told him he had "lost his money," and asked the witness whether he thought various persons, naming them, had taken it, but that he did not in any way accuse the deceased. Grady Morgan testified that he, the defendant, and the deceased had been drinking together the night before the killing; that the deceased had just returned from Sacramento; that defendant asked him how much money he had spent there, and the deceased laughingly replied, "I spent your seventy-

five dollars and sixty more''; that later the same evening
the three men came into Raevell's room, where defendant
said to the deceased, " 'Dick, I believe you took my money,'
or something like that, and Dick, he puffed up right away,
and he says, 'Where in hell do you get that . . . old
stuff' ''; that subsequently defendant and he (the witness)
repaired to the latter's room; that just before they parted
for the night "He asked me . . . if I would wake him up
in the morning. . . . I says, 'Where you going to work?'
'Oh,' he says, 'no place; I just got something I want to
attend to' ''; that between 5:30 and 6:00 the next morning,
while the witness was still in bed, defendant came into his
room and told him, "I heard Dick talking all night. . . . I
never slept at all. . . . I'm satisfied Dick took my money'';
that about an hour later defendant again entered his room,
showed him a 32-caliber revolver, and said, "Grady, I've
made up my mind to kill Dick''; that the witness attempted
to dissuade him from his purpose, but defendant replied,
" 'I·want you to get up and dress and go down to the break-
fast table and watch it. I'm going to kill him right in the
dining-room.' The last thing he said when he went out of
the door was, 'Well, I've made up my mind, Grady.' "

W. C. Chilson and Charles Bloom testified that they were
in the former's room about 7 o'clock on the morning of the
murder, when defendant came in and said he "had a line on
the fellow that got my money,'' and showed them a 32-cali-
ber revolver; that both of then told him to "throw that
d——d thing away; and that he went out, saying that he
would. John Lewis stated that "a little before eight
o'clock'' on the same morning he met the defendant on the
street in Esparto; "He walked up there and he sat down
for a minute, I suppose,—not more, and he says, 'Well,
Lewis, I got a trace of my money.' And I says, 'Is that
so?' He says, 'Yes, . . . Dick Raevell. I'm going to walk
up and shoot him.' And just about that time Dick came
walking across from the hotel [where he, the defendant,
Morgan, Chilson and Bloom were staying]. .·.. . Clark got
up and went over where he was and I got up and went down
the street.''

It appears from the testimony of Lewis, Chilson, Bloom
and Charles Mack, who were eye-witnesses to the murder,
that about five minutes before 8 o'clock they were sitting in

front of a butcher-shop on the east side of the main street of Esparto. Just north of the butcher-shop, on the same side of the street, was a garage. Shortly after the talk between defendant and Lewis, as already detailed, the former was seen walking north on the west side of the street in company with the deceased. When about opposite the garage they crossed the street, and just before they reached the sidewalk the defendant turned aside as if to join the other men in front of the butcher-shop. The deceased continued on to the sidewalk, where he stopped and stood looking into the garage with his back to the defendant. The defendant, after taking a few steps toward the witnesses, suddenly wheeled around, pulling a revolver from his pocket, walked up behind Raevell, and fired one shot which struck him just back of his left ear. Raevell sank to the ground, rolling over on his back. His face was thus exposed to the defendant, who then stepped to the feet of the wounded man and fired a second shot into the outer corner of his left eye. The death of Raevell from these wounds followed in the course of a few hours. When the defendant was arrested by the sheriff about 9 o'clock while on his way to Woodland he handed over a revolver to the officer, with the remark, "This is what I shot Dick with."

The evidence above outlined is substantially uncontroverted. It was testified by several of the witnesses for the prosecution on cross-examination that the defendant was addicted to the use of intoxicants and that on the day preceding the homicide he had been drinking heavily. This was relied on in part to establish insanity as a defense to the crime charged, and the record shows that the jury was elaborately instructed on that subject, as well as partial insanity and irresistible impulse, and the meaning of section 22, and subdivisions 2 and 3 of section 26, of the Penal Code. In view of the adverse verdict, and the absence of any suggestion in the case that the deceased had said, or done anything to provoke, or to cause him to apprehend, an attack, we must assume that the jury found that the defendant was guilty of an unprovoked, deliberate, and premeditated murder, without any extenuating circumstances.

1. Appellant's first contention is that "the trial court erred in refusing defendant's motion for a new trial. At the hearing of this motion defendant introduced an affidavit, made

by J. E. Strong, one of defendant's attorneys, in which affidavit it was alleged that one of the jurors . . . admitted to the said J. E. Strong that he had read certain articles appearing in certain newspapers," referring to publications touching the trial, including an assorted attempt by the defendant to simulate insanity. No other showing of misconduct was made. **[1]** The contention cannot be sustained. As was said in *People* v. *Findley,* 132 Cal. 301, 308, [64 Cal. 472, 475], "It is the settled law of this state that the verdict of a jury cannot be impeached by the affidavits of jurors showing misconduct on the part of any member of the jury. . . . Nor can a verdict be impeached by the hearsay statements of jurors regarding such misconduct. (*People* v. *Azoff,* 105 Cal. 632, [39 Pac. 59].) It is equally clear that defendant's affidavit as to the misconduct of the jury, based as it is solely on information and belief, is entitled to no weight. There was no competent or proper evidence of misconduct of the jury laid before the court, and the court very properly refused to grant a new trial."

The rule is thus stated in *People* v. *Kromphold,* 172 Cal. 512, 524, [157 Pac. 599, 604]. "On the motion for a new trial an affidavit made by one of the counsel for defendant was read and filed, reciting certain statements made to said counsel after the trial by one of the jurors. On this affidavit alone is based the claim of misconduct of the jury, and that the verdict has been decided by means other than a fair expression of opinion on the part of all the jurors. The trial court refused to consider the affidavit on two grounds, viz., that a juror cannot be allowed to impeach his own verdict, and that the affidavit here set forth matters purely of a hearsay nature, not being made by the juror but by another who simply stated what the juror told him. It is definitely settled in this state both that the affidavit of a juror cannot be received to impeach the verdict except where it is the result of a resort to the determination of chance (*People* v. *Soap,* 127 Cal. 408, [59 Pac. 771]; *People* v. *Azoff,* 105 Cal. 632, [39 Pac. 59]), and that the same policy that prohibits a juror from impeaching his verdict by his affidavit prevents such impeachment by statements made by the juror to others. (*People* v. *Azoff,* 105 Cal. 632, [39 Pac. 59]; *People* v. *Dobbins,* 138 Cal. 694, 699, [72 Pac. 339].)" (See, also, 16 C. J. 1241.)

The case of *People* v. *McCoy*, 71 Cal. 395, [12 Pac. 272], cited by appellant, can have no application here. In that case the court granted a new trial upon an affidavit made by appellant's attorney stating unequivocally that he had seen certain of the jurors reading a newspaper containing ''an editorial condemnatory of the administration of justice in criminal actions.'' Here, the affiant avers that one of the jurors *told him* he had read certain newspaper articles during the course of the trial, and states on *information and belief* that others of the jury read the same articles. Appellant also refers to *People* v. *Leary*, 105 Cal. 491, [39 Pac. 24], but it appears in that case that the proof of misconduct consisted of direct testimony by another that the jurors had read a newspaper. This authority is distinguishable on the same ground as the McCoy case. Plainly, the affidavit here was not admissible to impeach the verdict of the jury.

2. Appellant next assigns error in the giving of that portion of the following instruction requested by the prosecution which we have italicized: ''15. I instruct you gentlemen that you are to take into account in weighing the testimony of any witness, his interest or want or interest in the result of the case, his appearance upon the witness-stand, his manner of testifying, his apparent candor or want of candor, whether he is supported or contradicted by the facts and circumstances in the case as shown by the evidence.

''You have a right to believe all the testimony of a witness, or believe it in part, or you may reject it altogether, as you may find the evidence to be.

''*You are to believe as jurors what you would believe as men, and there is no rule of law that requires you to believe as jurors what you would not believe as men.*''

Appellant claims that this language ''is not a correct statement of the law.'' Instructions phrased in the same or substantially similar language have frequently been subjected to scrutiny by appellate courts in this and other jurisdictions. In *Commonwealth* v. *Harman*, 4 Pa. St. 269, the defendant had been charged with murder. Chief Justice Gibson, in instructing the jury, declared: ''All evidence is more or less circumstantial, the difference being only in the degree; and it is sufficient for the purpose when it excludes disbelief; that is, actual, and not technical disbelief; for he who is to pass on the question is not at liberty to disbelieve

as a juror while he believes as a man. It is enough that his conscience is clear.''

This language was incorporated in an instruction given in *State* v. *Collins,* 20 Iowa, 85, and it was held on appeal, reversing the judgment, that ''the detached fragment embodied in the instruction above quoted we cannot but believe to be of dangerous tendency. . . . We all believe facts as men, when we would not believe them and act upon them as jurors. The idea sought to be conveyed is that a juror is not an artificial being whose judgment is to be governed by technical and artificial rules, but that he is a man, and should, while acting as a juror, act as a man, exercising his reason, his intelligence, his every day judgment and his common sense. In this sense the proposition that, if one believes as a man, he should also believe as a juror, is correct, providing that belief be founded upon and produced by the evidence in the case, and by nothing else, and is so strong, clear and satisfactory as to exclude all reasonable doubt. If the guilt of the defendant had been fully and undeniably established, if the verdict upon the evidence were satisfactory, we might not have interfered with the judgment in consequence of the giving of the instruction under consideration. The instruction, as given, was, without explanation, calculated to mislead the jury.''

We quote from *People* v. *Whitney,* 53 Cal. 421: ''At the request of the district attorney, the court instructed the jury that 'a juror has no right to disbelieve the evidence as a juror while he believes it as a man. If, therefore, from the evidence in the case, you believe as men that the defendant is guilty, you should as jurors believe him guilty' . . . [quoting from *Commonwealth* v. *Harman, supra*]. The instruction, it may be assumed, was taken mainly from the language above cited; but by directing the attention of the jurors to the *evidence,* and not merely to the question of the guilt of the defendant, or even to the ultimate facts to be established by the prosecution, it avoids the objection stated by Mr. Justice Dillon in *State* v. *Collins,* 20 Iowa, 98, and in our opinion was not calculated to mislead the jury. The only objection to the instruction is that it is useless, and that, having been given, it affords the defendant an opportunity to bring it up to this court for review. It is not to be presumed that jurors would, from the charge of the court,

the arguments of counsel, or anything transpiring at the trial, entertain the idea that in becoming jurors they had ceased to be men, or had acquired any new capacity by which they might test the truth of evidence; it was therefore as unnecessary to instruct them that a juror has no right to disbelieve the evidence as a juror while he believes it as a man, as it would have been to charge them that in becoming jurors they had not lost the capacity which they possessed as men, to distinguish truth from falsehood or mistake.''

And in *People* v. *Worden,* 113 Cal. 569, 575, [45 Pac. 844, 847], it was said: ''Of course it would be much the better course for trial judges, as has frequently been said by this court, to limit their description of reasonable doubt to language which has received repeated judicial approval; but they usually desire to add something in their own language, and in the case at bar the judge added something to the well-known definition of Chief Justice Shaw. We see nothing, however, in his charge on this subject that was erroneous, or likely to mislead the jury—even if it did not make the matter any clearer. The judge said: 'If, after considering all the evidence, you can say you have an abiding conviction,' etc., and then immediately said as follows: 'A juror is not at liberty to disbelieve, as a juror, what he believes as a man.' This latter clause, of course, referred to a belief founded on the evidence; and a similar instruction was held in *People* v. *Whitney,* 53 Cal. 420, to be 'useless,' but not erroneous or misleading.''

The instruction complained of is in the identical language of one given in *Dodge* v. *Reynolds,* 135 Mich. 692, [98 N. W. 737], where it was held that ''it was not misleading and was a proper charge.'' (See, also, *Nevling* v. *Commonwealth,* 98 Pa. St. 322; *Spies* v. *People,* 122 Ill. 1, [3 Am. St. Rep. 461, 12 N. E. 865, 17 N. E. 898]; 19 C. J. 995.) In *State* v. *Kellison,* 56 W. Va. 690, [47 S. E. 166], it was said: ''Instruction No. 2 told the jury that a reasonable doubt was not a vague or uncertain doubt, and that what the jury believed from the evidence as men they should believe as jurors. This, taken in connection with the instruction given for the defendant, saying it was the duty of the state to prove the accused guilty beyond all reasonable doubt in order to convict, states the law with sufficient accuracy. They were told that their belief must be founded upon the evidence, and that a

vague or uncertain doubt is not a reasonable doubt within the meaning of the law. How there could be any difference between their belief as men and their belief as jurors is not perceptible. Being jurors, they were still men, and the only belief possible is that which fastens itself upon the human mind, and they were told that it must be belief beyond all reasonable doubt. All the authorities say that reasonable doubt is difficult to define, but that its meaning is not difficult for a jury to comprehend. *State* v. *Sheppard,* 49 W. Va. 582, 609, 610, [39 S. E. 676]. . . . As the jurors were acting under oath, it cannot be assumed that they were men of such feeble understanding as to deem themselves relieved from the obligations thereby imposed by the terms of the instruction." The judgment therein was affirmed.

*Robinson* v. *State,* 18 Wyo. 216, [106 Pac. 24], is cited by appellant. Instruction No. 6 contained this language: "You are not at liberty to disbelieve as jurors if you believe as men; your oath imposes upon you no obligation to doubt where no doubt would exist if no oath had been administered." The court declared: "One of the essential elements of that instruction is lacking, viz., that the belief in the guilt of the accused sufficient to convict must be based upon the evidence in the case." But in the instruction at bar the language complained of it immediately preceded by this: "You have a right to believe all the testimony of a witness, or believe it in part, or you may reject it altogether, as you may find the evidence to be." It is plain that the verdict at which the jury was to arrive "must be based on the evidence in the case."

Appellant also cites on this point *People* v. *Johnson,* 140 N. Y. 350, [35 N. E. 604]. We quote from the opinion in that case: "There was a request to charge . . . that the jurors should be convinced as jurors when they would be convinced as men, and should doubt as jurors, when they would doubt as men. This eliminates the oath and the responsibility of the jury." The instruction was held to have been properly refused. This authority, like the Robinson case, is distinguishable from the one at bar.

In the first instruction requested by appellant and given, the jury were told that "every intendment of the law is in favor of innocence. The law presumes the defendant to be innocent of any degree of crime until his guilt is proven

beyond all reasonable doubt by competent evidence. This presumption of innocence rests with the defendant throughout all stages of the trial until the case is finally submitted to you for your deliberation, and during your deliberation and until a verdict is agreed upon. Each and every fact and circumstance relied upon by the prosecution to establish the guilt of the defendant must be proven by the evidence in the case beyond a reasonable doubt; but the defendant is only called upon to raise in your minds a reasonable doubt as to the truth of any fact relied upon by him to establish his innocence." In the third instruction requested by the defendant and given to the jury the term "reasonable doubt" was correctly defined.

[2] In the light of the foregoing authorities and the cognate portions of the charge which we have quoted, it cannot be said that the instruction in question was calculated to confuse the jury, or that it was erroneous. As in *People v. Whitney,* 53 Cal. 420, the attention of the jurors was directed to the testimony, and not to the question of the guilt or innocence of the defendant. The entire instruction pointed out the matters which the *jurors* should take into consideration in resolving the credibility of the witnesses (Code Civ. Proc., sec. 1847; Pen. Code, sec. 1102), and merely concluded with an injunction that in determining such credibility whatever they believed as *men* they were to believe as *jurors,* and that there was no rule of law requiring them to believe as jurors what they would not believe as men—an admonition sagely sound but palpably unnecessary. It is not conceivable that the jury understood the instruction in any other sense than that, while passing upon the evidence as jurors, they were to be governed by the conclusions which they would reach as men. It may be observed, however, that where a jury in a criminal case has been properly instructed as to the presumption of innocence and the doctrine of reasonable doubt, an instruction like the one under review should not be given, for, as Mr. Justice Rhodes remarked in the Whitney case, "the only objection . . . is that it is useless, and that, having been given, it affords the defendant an opportunity to bring it up to this court for review."

3. Appellant's third assignment of error is to "all of the rulings of the court overruling the objections of his counsel,

or sustaining the objections of the district attorney, . . . together with the giving of the instructions as they appear in the record.'' No portions of the record are referred to or quoted, no authorities are cited or discussed, and, indeed, appellant does not specify wherein the court erred in the giving of the instructions or in the rulings on the evidence. [3] We do not feel called upon to consider points so presented. (See *Gray* v. *Walker*, 157 Cal. 381, [108 Pac. 278]; *Dore* v. *Southern Pacific Co.*, 163 Cal. 182, [124 Pac. 817]; *Born* v. *Castle*, 175 Cal. 680, [167 Pac. 138]; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345, [184 Pac. 672].) But, because of the gravity of defendant's situation, we have scrutinized the record, and, apart from the assignments of error already considered, we do not find that any of the objections require discussion. The trial was conducted with marked fairness on the part of both court and counsel. The charge to the jury was complete, every one of the twenty-one instructions proposed by the defendant, covering a wide range of subjects, being given, and upon the evidence it does not seem that any other verdict could have been returned.

Judgment and order affirmed.

Wilbur, J., Lennon, J., Sloane, J., Shaw, J., Olney, J., and Angellotti, C. J., concurred.