[Crim. No. 2070. First Appellate District, Division One.—September 20, 1940.]

THE PEOPLE, Respondent, v. ALFRED BUENAFLORE et al., Defendants; MARINO PIAS, Appellant.

Whitthorne & Magana for Appellant.

Earl Warren, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

KNIGHT, J. — The defendants, Alfred Buenaflore and Marino Pias, engaged in a gun battle with each other about 7 o'clock in the evening in a public poolroom and restaurant on Post Street in San Francisco known as the Royal Cafe. Neither was injured, but one of the bullets struck and killed German Damsing, the proprietor of the cafe. Following the killing Buenaflore and Pias fled from the scene of the shooting and disappeared; but they were captured about three and a half years later, and having been indicted jointly for the murder of Damsing they were tried together, found guilty by a jury of murder of the second degree, and sentenced to imprisonment in the state prison. From the judgments of conviction and the order denying their motions for a new trial they appealed. At the trial they were defended by

separate counsel, and subsequent to the filing of the record in this court the appeal taken by Buenaflore was dismissed at his request. The appeal taken by Pias was submitted, on his part, on a nine-page opening brief, without oral argument; and the first point made in his behalf is that as to him the evidence is insufficient as a matter of law to sustain a conviction of murder. There is no merit in the point.

The testimony as to the circumstances leading up to and attending the shooting is conflicting. Resolving all such conflicts in favor of the jury's verdict, the principal facts established against Pias may be summarized as follows: A few hours prior to the fatal shooting Pias and Buenaflore, both of whom are Filipinos, became involved in a bitter quarrel over a white girl, which started in the Royal Cafe and ended in a fist fight in the street nearby. According to the girl's testimony Pias had been molesting her for some time by attempting to force his attentions upon her, and on this particular evening he accosted her on the street, grabbed her violently by the arm, and shook her, and in order to escape further violence she sought refuge in the Royal Cafe, taking a seat at the lunch counter. Pias followed her into the cafe and commanded her "to eat", saying it would be her "last meal". She stated that she tried to reason with him, but all he did was to pace the floor nearby. About this time Buenaflore entered the cafe. The girl had known him for a long while but had not seen him for several months, and she appealed to him to escort her out of the cafe. Pias forbade him doing so, but they left together and Pias followed them. Upon reaching the street Pias again grabbed the girl by the arm, whereupon Buenaflore grappled with Pias, and the men began fighting. During the melée Pias released his hold on the girl, and observing that the men were reaching for their pockets she ran away from the scene of the fighting. The men were finally separated by friends, and a little later on Buenaflore returned to the cafe. A boy named Salas employed therein saw Buenaflore as he entered, and noticed he was armed with a pistol. The boy immediately informed Damsing of the fact, and then went out on the street to summon a policeman. On the way out and while passing through a hallway leading from the cafe entrance to the street the boy met Pias and a companion named Vera going toward the cafe entrance, and he observed that

Pias was armed with a pistol. As soon as Salas left the cafe Damsing went over to Buenaflore and requested him to leave, and after some persuasion he consented to do so; whereupon they started toward the doorway, walking side by side—Damsing's hand resting on Buenaflore. As they neared the middle of the room in that position Pias and Vera entered the doorway and instantly Pias and Buenaflore began shooting at each other. At least four shots were fired, and at the first shot Damsing fell to the floor, mortally wounded. Following the shooting Pias and Vera escaped through the front entrance, and Buenaflore fled through the back. The police arrived shortly afterwards and found Damsing's body lying on the floor. They also found on the floor four discharged pistol cartridges, one being a .25 caliber and the others .32 caliber. The autopsy disclosed that Damsing had been shot from the front, with a .25 caliber bullet which entered his left front shoulder; and there were no powder marks where it entered. The bullet then ranged to the right, through his chest, penetrated both lungs, and lodged in the right armpit, causing death within a few minutes. It appears from Pias' testimony that he and Vera were driven to the cafe in an automobile by friends who waited outside, and that following the shooting their friends drove them away in said automobile. It also appears from his testimony that he and Vera knew before entering the cafe that Buenaflore was carrying a pistol; that they anticipated meeting him in the cafe, and that there would be some shooting. The explanation offered by Pias for having visited the cafe at all was that he wanted to wash the blood off his face and hands, but the facts and circumstances of the case are amply sufficient to support the conclusion that he went there for the purpose of shooting Buenaflore, and that in attempting to carry out his unlawful design he inadvertently shot and killed Damsing. As declared by the decisions hereinafter cited, if one wilfully, premeditatedly and of his malice aforethought commits or attempts to commit an assault upon a certain person with the intention of killing him, but in the execution of his design unintentionally kills another instead, it is nevertheless murder. The intent in such case is transferred by law from his intended victim to the person killed. In other words, the crime is exactly what it would have been if the person against whom the intent to kill was directed had been in fact killed.

718

(*People* v. *Suesscr*, 142 Cal. 354, 365 [75 Pac. 1093]; *People* v. *Wells*, 145 Cal. 138 [78 Pac. 470]; *People* v. *Trebilcox*, 149 Cal. 307 [86 Pac. 684]; *People* v. *Rothrock*, 21 Cal. App. (2d) 116 [68 Pac. (2d) 364].) Therefore, under the facts and the law, the jury was fully justified in finding Pias guilty of murder.

Appellant concedes the law to be as above stated, but he contends that the evidence fails to establish that he fired the bullet that killed Damsing; that to the contrary it shows that it was fired by Buenaflore. This contention is based entirely on appellant's own uncorroborated story of the shooting, particularly with reference to the position of the parties at the time it took place; also his claim that the pistol he used was a .32 caliber; but certain impeachment evidence justified the rejection of his entire story. In particular his testimony relating to the actual shooting and the position of the parties at the time it started was wholly contrary to the facts as they were established by a witness named Morta, who was seated at the lunch counter and saw the entire affray from the time Buenaflore entered the cafe, and other than the defendants was the only witness to testify as to the circumstances attending the shooting. Moreover, certain physical facts were established by the prosecution which of themselves disprove any claim that the fatal shot was fired by Buenaflore. In this regard it appears alike from the testimony of appellant and Morta that Damsing, when shot, was less than arm's length from Buenaflore, and the evidence shows without conflict that if within such short range Buenaflore had fired the fatal bullet it necessarily would have left powder marks at the wound of entrance. Secondly, accepting as true the testimony given by Morta that Damsing when shot was walking alongside of and with his hand resting on Buenaflore, the evidence shows that the location of the entrance wound of the bullet and the direction it took in passing through Damsing's body were such that it was practically impossible for Buenaflore to have fired that bullet; on the other hand, if it be assumed as appellant claimed that Damsing when shot was standing in front of Buenaflore, trying to take his pistol away from him, the evidence shows that there would have been powder marks at the entrance wound of the bullet if it had been fired by Buenaflore. In view of the foregoing facts and circumstances there is no reasonable theory

upon which it may be held as appellant contends that he did not fire the bullet that killed Damsing.

On the eighth page of his brief appellant quotes two instructions given by the court, which he assigns as erroneous. No authorities are cited in support of the assignment, and the only comment made respecting the instructions is this: "Since Marino Pias admitted shooting the .32 caliber once then disregarding the plea of self defense he became *ipso facto* guilty under the courts instructions." The rule is that an assignment of error based on the giving of an instruction does not call for consideration on appeal where as here there is an absence of citation of authority, and the appellant fails to point out wherein the instruction is erroneous, or how or in what manner he has been prejudiced thereby. (*People* v. *Glab*, 15 Cal. App. (2d) 120 [59 Pac. (2d) 195]; *People* v. *Marron*, 140 Cal. App. 432 [35 Pac. (2d) 610]; *People* v. *Clark*, 183 Cal. 677 [192 Pac. 521].) However, we have examined the two instructions appellant quotes and find nothing improper therein. They contain merely a restatement in concise form of the legal doctrine declared in *People* v. *Suesser, supra,* and the other cases cited therewith. The apparent reason the law of self-defense was not touched upon therein was that it was fully expounded in another portion of the court's charge to the jury.

On the final page of his brief under the heading "Prejudicial Misconduct of the District Attorney" appellant quotes two excerpts from the prosecutor's argument to the jury, together with an objection which purports to have been made thereto in the trial court. But no argument whatever is presented, nor are any authorities cited to show wherein the quoted remarks constituted error; and it has been held repeatedly that the mere naked assignment of error is quite insufficient to warrant an inquiry into its merits. (*People* v. *McLean*, 135 Cal. 306 [67 Pac. 770]; *People* v. *Woon Tuck Wo*, 120 Cal. 294 [52 Pac. 833]; *People* v. *Ferugia*, 95 Cal. App. 711 [273 Pac. 99].) Under the rule just stated said assignment might well be disregarded. However, there are several additional legal reasons for holding that no ground for reversal has been shown. First, an inspection of the record discloses that the first excerpt, containing ten lines, was taken from the prosecutor's opening argument, and that no objection whatever was made in the trial court to any

portion of the opening argument; consequently objection thereto cannot be raised for the first time on appeal. (*People* v. *Kramer*, 117 Cal. 647 [49 Pac. 842]; *People* v. *Sieber*, 201 Cal. 341 [257 Pac. 64]; *People* v. *DuBois*, 16 Cal. App. (2d) 81 [60 Pac. (2d) 190].) ■ Secondly, the record shows that the other excerpt, which consists of an incomplete sentence of thirteen words, was part of a statement made by the prosecutor during his closing argument, wherein he presumed to offer his view on a matter of law, and his statement was challenged by counsel for appellant in the following language: "That is not correct. I interpose an objection and assign it as prejudicial misconduct." But on this appeal no effort has been made by appellant, by way of citation of authority, argument, or otherwise, to substantiate the bare assertion made by him in the trial court that the view expressed by the prosecutor was not correct; nor has he attempted to point out wherein the expression of the prosecutor's view operated to the prejudice of this appellant. Therefore under the rule of the cases above cited this court is not called upon to pursue an inquiry of its own to ascertain and determine the merits of the objection made by appellant in the trial court. ■ As said in effect in *People* v. *McLean*, *supra*, the burden rests on an appellant to point out clearly and concisely not only the matters claimed to be erroneous, but the reasons why they are so; and upon his failure so to do, it will be deemed that such matters are not of sufficient importance to demand independent investigation. ■ Third, the record shows that immediately after appellant's objection was interposed and at his request the trial court instructed the jury in substance to disregard the view expressed by the prosecutor, adding that the law governing the case would be given by the court in its charge to the jury; and subsequently the court did correctly instruct the jury in conformity with the legal doctrine declared in *People* v. *Suesser*, *supra*, and the other cases cited therewith, which is not in accord with the view expressed by the prosecutor. ■ Fourth, since the facts of the case overwhelmingly establish the guilt of this appellant under the law as given to the jury by the court and as appellant concedes it to be, it cannot in any event, be said that the verdict against him has resulted in a miscarriage of justice.

Whether in the state of the record here presented the conviction of Buenaflore also could have been upheld is a matter with which we are not here concerned. As mentioned in the beginning, he abandoned his appeal.

The judgment of conviction as to the appellant Pias and the order denying his motion for new trial are affirmed.

Peters, P. J., and Ward, J., concurred.