[Crim. No. 11449. First Dist., Div. One. Feb. 20, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL GREGORY CARLSON, Defendant and Appellant.

## COUNSEL

Harkjoon Paik, Public Defender, and David A. Barish, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Thomas P. Dove, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from the judgment upon his conviction by the trial court of voluntary manslaughter (Pen. Code, § 192, subd. 1) and second degree murder (Pen. Code, § 187). Although the appeal is from the entire judgment, the only issue on appeal is whether the manslaughter conviction for the killing of defendant's wife is a felony which can sustain the second degree conviction for the killing of the fetus carried by the wife at the time of her death under the felony-murder rule. The trial court determined that the killing of defendant's wife was without malice and the result of "the combination of sudden quarrel, heat of passion and mental confusion." Upon the basis of this determination the trial court concluded that since the manslaughter was a felony it was constrained to find defendant guilty of the second degree murder of the fetus under the felony-murder rule.

Defendant was charged with the murder of two separate entities, his wife and his unborn child. Under the provisions of Penal Code section 187, subdivision (a),[1] "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought."[2] The two homicides alleged resulted from the one act of defendant. The cause of the wife's death was lack of oxygen to the brain. The fetus died as a direct result of the death of the mother.

■ It should be observed here that although the murder of two persons by the same act constitutes two offenses for each of which separate prosecutions may be had with conviction or acquittal in one case not barring prosecution in the other (*People* v. *Majors,* 65 Cal. 138, 146-147 [3 P. 597]), it is implicit in the trial court's findings that defendant did not have the specific intent to kill his unborn child. It is equally apparent from the court's findings that upon a consideration of the offense charged with respect to the fetus, independent of the offense charged with respect to defendant's wife, the court concluded that the evidence was insufficient to support a finding that defendant was guilty of the murder of the fetus, or of any lesser and included offense. The sole basis upon which the court concluded that defendant was guilty of the murder of the fetus was the offense found, upon sufficient evidence, to have been committed against the wife, i.e., voluntary manslaughter. This determination, as declared by the court, was made on the basis of the application of the felony-murder rule.

■ The second degree felony-murder rule was developed by the courts in the course of defining second degree murder.[3] It is basically an adoption of the common law rule that homicides which occur during the perpetration of any felony constitute murder. (See Comments, *Merger and the California Felony-Murder Rule* (1972) 20 U.C.L.A. L.Rev. 250, 252; and see Pike, *What is Second Degree Murder in California?* (1936) 9 So.Cal. L.Rev. 112, 118.) The application of the rule has, however, been limited

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]Under subdivision (b) of section 187, certain exceptions are delineated as applied to an act which results in the death of a fetus. None of these exceptions is applicable to the instant case.

[3]Section 189, referred to as the "felony-murder statute," provides, in relevant part: "All murder . . . which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree."

by the courts to require that the commission of the felony involve substantial risk to human life. Accordingly, in California the felony which forms the basis for the rule must be one, when viewed in the abstract, that is inherently dangerous to human life. (*People* v. *Satchell,* 6 Cal.3d 28, 39-40 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *People* v. *Ireland,* 70 Cal.2d 522, 538 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]; *People* v. *Phillips,* 64 Cal.2d 574, 582 [51 Cal.Rptr. 225, 414 P.2d 353]; *People* v. *Williams,* 63 Cal.2d 452, 457-458, fn. 4 [47 Cal.Rptr. 7, 406 P.2d 647]; *People* v. *Ford,* 60 Cal.2d 772, 795 [36 Cal.Rptr. 620, 388 P.2d 892] [cert. den., 377 U.S. 940] (12 L.Ed.2d 303, 84 S.Ct. 1342).)

Since the effect of the felony-murder doctrine is to erode the relation between criminal liability and moral culpability the Supreme Court has declared the caveat that the doctrine "should not be extended beyond any rational function that it is designed to serve." (*People* v. *Washington,* 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130]; *People* v. *Satchell, supra,* 6 Cal.3d 28, 33-34; *People* v. *Ireland, supra,* 70 Cal.2d 522, 539.) █ Accordingly, the doctrine should "be given the narrowest possible application consistent with its ostensible purpose—which is to deter those engaged in felonies from killing negligently or accidentally [citation]." (*People* v. *Satchell, supra, at* p. 34; see *People* v. *Washington, supra, at* pp. 781-783, and authorities there cited.)

█ In the instant case it is clear that the fetus was killed by defendant while he was engaged in the commission of a felony, i.e., manslaughter, which, in the abstract, was one inherently dangerous to life. The question presented is whether its application under the circumstances of the present case extends it beyond any rational function that it is designed to serve, particularly in view of the fact that the death of both defendant's wife and her unborn child resulted from one act of defendant and in view of the principle that the murder of two persons by the same act constitutes two offenses for each of which separate prosecutions may be had.

Defendant contends that the application by the trial court of the felony-murder doctrine was improper because it permitted the prosecution to bootstrap a manslaughter to a murder. Reliance is placed on *Ireland* where it was held that a second degree felony-murder conviction may not be predicated upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged. (70 Cal.2d at p. 539.) In that case the defendant shot and killed his wife. The court gave an instruction which could be understood by the jury to mean that if the homicide was com-

mitted in the perpetration of the crime of assault with a deadly weapon it should find the defendant guilty of second degree murder.

*Ireland* is clearly distinguishable from the instant case in that the victim of the homicide was the same person upon whom the underlying felony of assault with a deadly weapon was purportedly perpetrated. Here the felony utilized as the underlying felony, i.e., the manslaughter of defendant's wife, was used as the basis for defendant's conviction of the murder of his unborn son. We therefore must consider whether the rationale of *Ireland* is applicable under the circumstances of the present case because there are two victims rather than one.

■ It should be noted here that the effect of the felony-murder rule is to withdraw from the trier of fact the issue of malice and thus relieve the trier of fact from the necessity of finding one of the elements of the crime of murder. (*People* v. *Ireland, supra,* 70 Cal.2d 522, 538; *People* v. *Phillips, supra,* 64 Cal.2d 574, 584.) ■ As applied to the instant case the rule would permit a conviction of second degree murder for the killing of the fetus merely upon a showing that the death of the fetus resulted from defendant's conduct amounting to manslaughter of the mother in whose womb the fetus was being carried.

We are persuaded that it is unnecessary to resort to the felony-murder rule where the homicide of two persons by the same act constitutes separate offenses for which separate prosecutions and conviction may be had independent of the short cut of the felony-murder rule. In such a case conviction can be predicated on the normal rules of murder and the element of malice aforethought may be established under the evidence including defendant's conduct and the inferences arising from it. (See *People* v. *Phillips, supra,* 64 Cal.2d 574, 587; *People* v. *Satchell, supra,* 6 Cal.3d 28, 33-34, fn. 11; and see Packer, *The Case for Revision of the Penal Code* (1961) 13 Stan.L.Rev. 252, 259; Notes (1967) 55 Cal.L.Rev. 329, 340.) As observed in *People* v. *Sears,* 2 Cal.3d 180, 187 [84 Cal.Rptr. 711, 465 P.2d 847], " 'That doctrine can serve its purpose only when applied to a felony independent of the homicide.' " Accordingly, if, as reasoned in *Ireland,* a man assaulting another with a deadly weapon could not be deterred by the second degree felony-murder rule because the assault was an integral part of the homicide, it seems to us equally reasonable to conclude that a man assaulting two persons at the same time and by the same act would not be deterred by the felony-murder rule since the assault was an integral part of the resulting homicide of the two victims.

In the present case it is apparent from the trial court's findings that the trial court concluded from the evidence that defendant did not mani-

fest any express malice or any implied malice, other than that implied under the felony-murder doctrine, toward either the wife or the unborn child since it did not find defendant guilty of second degree murder of either of the victims upon the predicate of malice. It would seem under the circumstances that if defendant was guilty of manslaughter with respect to the wife he would also be guilty of manslaughter with respect to the fetus, since the killing of both resulted from the same·act. Accordingly, it would be unnecessary to resort to the felony-murder rule. However, because of a peculiar anomaly in the statutory law there cannot be a manslaughter of the fetus.

Section 192, defining manslaughter, specifically provides that "Manslaughter is the unlawful killing of a *human being, . . .*" (Italics added.) In *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 625-631 [87 Cal.Rptr. 481, 470 P.2d 617, 400 A.L.R.3d 420], it was held that the term "human being" means a person who had been born alive and does not include an unborn fetus within its meaning. Accordingly, it was held that the definition of murder in section 187, which as it then read, merely referred to the "unlawful killing of a human being, . . ." and was not intended by the Legislature to include the act of killing an unborn fetus. (At p. 631.) In reaching this conclusion the Supreme Court relied upon the common law which declared that an infant could not be the subject of homicide unless it had been born alive.[4] (At pp. 625-628.)

In response to the holding in *Keeler,* the Legislature subsequently amended section 187 to provide that "Murder is the unlawful killing of a human being, *or a fetus,* with malice aforethought." (Stats. 1970, ch. 1311, § 1, p. 2440.) (Italics added.) However, the Legislature left untouched the provisions of section 192 defining manslaughter to be the "unlawful killing of a human being, . . ." Accordingly, under the present state of the law the unlawful killing of a human being or a fetus with malice aforethought is murder, but only the unlawful killing of a human being constitutes manslaughter.[5]

We may not speculate that this statutory incongruity prompted the trial court to utilize the felony-murder doctrine in view of the dilemma

---

[4]" 'If a woman be quick with childe, and by a potion or otherwise killeth it in her wombe, or if a man beat her, whereby the childe dyeth in her body, and she is delivered of a dead childe, this is a great misprision, and no murder; but if the childe be born alive and dyeth of the potion, battery, or other cause, this is murder; for in law it is accounted a reasonable creature, *in rerum natura,* when it is born alive.' (3 Coke, Institutes *50 (1648).)" (At pp. 625-626.)

[5]It is significant to note that other states have enacted statutes specifically declaring feticide to be a crime punishable as manslaughter. (See *Keeler* v. *Superior Court, supra,* 2 Cal.3d at p. 628, fn. 11 and statutes there cited.)

it was confronted with, i.e., that as a result of the same act it could find defendant guilty of the manslaughter of his wife but could not find him guilty of the manslaughter of his unborn child. We apprehend that since the court was presented with two separate charges of murder that under the evidence it could conclude that defendant had the specific intent to kill his wife but did not entertain the specific intent to kill his unborn child. Voluntary manslaughter is a crime requiring specific intent. (*People* v. *Gorshen,* 51 Cal.2d 716, 732-733 [336 P.2d 492]; *People* v. *Welborn,* 242 Cal.App.2d 668, 673 [51 Cal.Rptr. 644].) There is substantial evidence to support a finding that defendant entertained such specific intent with respect to his wife and there is substantial evidence supporting a finding that defendant did not have the specific intent to kill the fetus.

Assuming, *arguendo,* that defendant did not intend to kill his unborn child, it was unnecessary to resort to the felony-murder rule. If, under the evidence, defendant intended to kill his wife but by accident or inadvertence he killed the unborn child, the proper principle to be applied is that which operates under the doctrine of "transferred intent." (*People* v. *Sears, supra,* 2 Cal.3d 180, 188-189.)

■ Under the doctrine of "transferred intent" a person who purposefully attempts to kill one person but by mistake or inadvertence kills another instead, the law transfers the felonious intent from the object of the assault to the actual victim. (*People* v. *Suesser,* 142 Cal. 354, 367 [75 P. 1093]; *People* v. *Sears, supra,* 2 Cal.3d 180, 189; *People* v. *Sutic,* 41 Cal.2d 483, 491-492 [261 P.2d 241]; *People* v. *Clayton,* 248 Cal.App.2d 345, 349 [56 Cal.Rptr. 413]; *People* v. *Leslie,* 224 Cal.App.2d 694, 704 [36 Cal.Rptr. 915]; *People* v. *Buenaflore,* 40 Cal.App.2d 713, 717-718 [105 P.2d 621]; *People* v. *Pivaroff,* 138 Cal.App. 625, 628 [33 P.2d 44].) " 'In other words, the crime is exactly what it would have been if the person against whom the intent to kill was directed had been in fact killed.' " (*People* v. *Clayton, supra,* at p. 350; *People* v. *Leslie, supra*; *People* v. *Buenaflore, supra,* at p. 717.) In *Suesser* we find this statement of the principle: " 'In determining the criminality of the act of killing it will be immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintended result of the intent to kill some one else—the criminality of the act will be deemed the same.' " (Quoting from 1 McLain on Criminal Law, § 323; 142 Cal. at pp. 366-367.)

In *Pivaroff,* the defendant shot at his wife and child. The wife was wounded and the child was killed. The defendant stated he intended to kill his wife but did not intend to kill the baby. His conviction of first degree

murder was upheld under the doctrine of "transferred intent." (138 Cal. App. at p. 628.) In *Clayton,* the defendant fired two shots at a pedestrian, missed him, and one of the shots hit a passerby and killed him. A second degree murder conviction was upheld under the doctrine of "transferred intent." (248 Cal.App.2d at pp. 349-350.) Similarly, in *Leslie,* the defendant's conviction of second degree murder for the killing of his daughter while attempting to shoot his wife, was upheld on the ground that the law transferred the felonious intent from the original object of his attempt to the person killed and the homicide so committed was murder. (224 Cal. App.2d at p. 704.)

Under the rationale of the cases cited there can be no doubt that the doctrine of "transferred intent" applies even though the original object of the assault is killed as well as the person whose death was the accidental or the unintended result of the intent to kill the former. As observed in *Sears,* each victim of the attack is to be viewed individually and without regard to which in fact died. (2 Cal.3d at p. 189.) "It would be anomalous to place the person who intends to attack one person and in the course of the assault kills another inadvertently or in the heat of battle in a worse position than the person who from the outset intended to kill both persons and killed one or both." (At p. 189.)

Accordingly, in the present case in the application of the doctrine of transferred intent, the law would transfer defendant's felonious intent to kill his wife to the fetus and the criminality of defendant's act toward the fetus would be the same as that directed to his wife. Therefore, under the doctrine of transferred intent if defendant was guilty of the killing of his wife without malice, i.e., voluntary manslaughter (§ 192, subd. 1), he would normally be guilty of the voluntary manslaughter of the fetus. However, because of the peculiar anomaly in the statutory law hereinbefore alluded to, there cannot be a manslaughter of a fetus.

In view of the holding in *Keeler* that where the Legislature refers to the unlawful killing of a "human being" it does not intend the act of feticide, as distinguished from abortion, to be an offense under the law of California (2 Cal.3d at p. 628) and the legislative distinction made between murder and manslaughter with respect to a fetus, we have the incongruous situation that felonious intent may be transferred where the homicide committed on the fetus is murder but may not be transferred where the homicide committed on the fetus is manslaughter since there is no crime of manslaughter in the commission of the feticide.[6]

---

[6]In the instant case we are not called upon to decide whether feticide is a crime under statutes other than those providing for murder and manslaughter.

We may not speculate as to whether the omission of the term "or a fetus" from the manslaughter statute was done by design or whether it results from inadvertence. If the omission is by design it is not the province of this court to weigh the desirability of the social policy underlying it or to question its wisdom; if it is the result of inadvertence the correction must be by legislative action.

In view of the foregoing the conviction for second degree murder must be reversed. The trial court committed prejudicial error in utilizing the felony-murder rule to find defendant guilty of the second degree murder of his unborn child. (See *People* v. *Sears, supra,* 2 Cal.3d at p. 189.) If the conviction was based solely upon the basis of the felony-murder rule in order to preclude the trier of fact from considering the issue of malice aforethought with respect to defendant's conduct toward the fetus, a retrial would be necessary to determine the issue. However, it is apparent that the trial court, upon a consideration of the evidence before it under circumstances where the killing of both the wife and the fetus resulted from one act of defendant, concluded that defendant acted without malice, express or implied, excepting the implied malice which it deemed was present by operation of law under the felony-murder doctrine. In essence the trial court determined that except for the felony-murder rule the evidence was insufficient to find defendant guilty of the murder of the fetus. Under recognized principles defendant may not be retried for an offense of which he has, in essence, been acquitted. Accordingly, there is no merit to the People's contention urged in their supplemental brief that there must be a retrial to determine whether defendant did in fact act with implied malice on the basis that, as towards the fetus, defendant acted with an abandoned and malignant heart. (See Pen. Code, § 188; *People* v. *Conley,* 64 Cal.2d 310, 322 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Hudgins,* 252 Cal.App.2d 174, 180 [60 Cal.Rptr. 176].) The facts asserted by the People to be sufficient to establish such implied malice were before the court below. However, the trial court did not deem them sufficient to make a finding of second degree murder on the basis of such implied malice but instead felt constrained to invoke the felony-murder rule.

Adverting to the question whether the reversal requires a retrial for the offense of manslaughter as respects the fetus, we must conclude that defendant may not be tried for any such asserted lesser offense included within the charge of murder because, under existing law, there is no crime constituting manslaughter of a fetus. Moreover, as already pointed out, defendant's specific intent to unlawfully kill his wife without malice, re-

sulting in the crime of manslaughter, may not be transferred to the killing of the fetus because, with respect to the fetus, there is no crime of manslaughter.

The judgment is affirmed as to defendant's conviction of manslaughter (count one of the indictment) and reversed as to his conviction of second degree murder (count two of the indictment) with directions to the trial court to amend the judgment from which this appeal is taken to reflect that defendant is acquitted of the charge embraced in count two of the indictment.

Sims, J., and Elkington, J., concurred.